**Neal HILLIARD, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 38240.**

Court of Criminal Appeals of Texas.

March 23, 1966.

Rehearing Denied May 11, 1966.

C. C. Divine, Francis L. Williams, Houston, for appellant.

Carol Vance, Dist. Atty., James C. Brough, Asst. Dist. Atty., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

DICE, Commissioner.

Appellant and Chester C. Divine, alias "Andy" Divine, Roy Dean Berger, A. L. Phipps, Mary Alice Zaid, and Alfred Divine were jointly charged by indictment with the offense of felony theft.

The indictment alleged that on or about the 14th day of August, 1963, the defendants did fraudulently take and steal $111.25 in money from one O. C. Jones.

Upon the granting of a severance, the appellant was separately tried and convicted and his punishment assessed at confinement in the penitentiary for a term of ten years.

The statement of facts in narrative form was prepared and certified by the trial judge after the parties were unable to agree upon one within seventy-five days after the giving of notice of appeal.

We first overrule appellant's contention that the judgment should be reversed because he has been deprived of a statement of facts in question-and-answer form, as requested in his pauper's affidavit filed in the cause.

The record reflects that notice of appeal was given on March 25, 1964.

Soon thereafter, appellant's counsel contacted the court reporter, M. I. Mondshine, relative to the cost of a statement of facts and, after being apprised of the cost, advised that his client could only pay for the same at the rate of $100 per week. The court reporter agreed to furnish the statement of facts and commence transcribing his notes as soon as the first down payment of $100 was made. The official court reporter was not thereafter paid any money and no further request to furnish the statement of facts was made of him.

On June 23, 1964, and September 17, 1964, motions were filed by appellant to extend the time for filing the statement of facts. Orders entered by the court on such motions extended the time for filing to November 17, 1964.

On November 12, 1964, appellant filed in the cause his pauper's oath requesting that the court reporter prepare a statement of facts in question-and-answer form. On such date it was so ordered by the court.

Subsequently, motions for extension of time to file the statement of facts were filed by appellant, which motions were granted and orders entered by the court extending the time for filing to July 12, 1965.

On July 12, 1965, a hearing was held by the court relative to the preparation of the statement of facts, at which time it was ascertained that the court reporter's notes had been lost. It was shown at the hearing that the tenure of the court reporter had terminated on April 15, 1964, and that his notes taken in the case had been lost subsequent to that date. It was further shown that the state had prepared a statement of facts to which appellant's counsel would not agree and that counsel for appellant declined to prepare a statement of facts.

Thereupon, the trial court announced that the court would prepare a statement of facts—which is the statement of facts now filed in the record.

■ While appellant was entitled to a statement of facts in question-and-answer form under the provisions of Art. 759a, Vernon's Ann.C.C.P., upon the filing of a pauper's oath, it was incumbent upon him to exercise due diligence to procure the same. Murphy v. State, 129 Tex.Cr.R. 623, 91 S.W.2d 738. The delay of nearly eight months in filing the pauper's oath after giving notice of appeal does not reflect the exercise of diligence. Had the pauper's oath been filed before the court reporter left office on April 15, 1964, the statement of facts could have been furnished in question-and-answer form. Under the record, a reversal of the conviction is not called for, and the contention is overruled.

The state's proof shows that appellant was Grand Master of the National King Solomon Lodge, AF and AM, U. S. A., of Houston, Texas, and also a co-owner of the

subordinate Golden Eagle Lodge No. 1. Al Phipps was employed by appellant, selling memberships in the Golden Eagle Lodge.

O. C. Jones testified that on July 31, 1963, he gave Phipps $85 as the "first payment" for membership in the Golden Eagle Lodge after Phipps had induced him to join that organization. He testified:

"I told him * * * I wanted to be a mason, and that further, I wanted to visit my father's lodge and the lodges of my friends * * * Phipps replied that not only could I visit these lodges, that I would be welcome in any Masonic Lodge anywhere in the world. Phipps told me that once a person was made a Mason that he could visit any other lodge or transfer his membership to any other lodge."

On August 13, 1963, initiation ceremonies were conducted for Jones in the law offices of C. C. Divine, after which Jones was given a membership card identifying him as a 33rd Degree Mason. The card was signed by appellant. The next day, August 14, 1963, Jones gave a check for $111.25, payable to National Grand Lodge, in payment on the initiation. Jones further testified that when he attempted to gain admittance into other Masonic Lodges he found that he was not welcome at these lodges and that he then realized he had not been made a Mason and attempted to get his money back, but his request was refused.

Five other witnesses testified that they had been induced to join the Golden Eagle Lodge #1 under circumstances virtually identical to the transaction involving the witness Jones.

The following testimony of Al Phipps is found in the narrative statement of facts:

"* * * Neal Hilliard had formed a Golden Eagle Lodge and he got me interested in selling memberships in the Golden Eagle Lodge. He told me to carry a Bible and those people that would be interested, to have them swear on the Bible that they would not tell anyone of their other friends that they were going through the obligations and ceremonies of joining this Golden Eagle Lodge. I never told any of these people the location of Neal Hilliard's lodge over on Andrews Street and Neal Hilliard told me not to mention this because the Golden Eagle Lodge was to be a lodge of all white people and the lodge over on Andrews Street, the National King Solomon Lodge at 711 Andrews, was mostly a Negro lodge. I went to a meeting in which C. C. Divine, Roy Dean Berger, Neal Hilliard, William Byrd, Mary Alice Zaid and Max Allen Russell and Alfred Divine were present. * * * The money that was to come in through dues and initiation— it was agreed that it would be split up as follows: the salesmen would get twenty per cent of any membership sold, five per cent would come off of the top to go to the offices of C. C. Divine, and Neal Hilliard was to get the remaining portion. Neal Hilliard was in charge of this meeting—so far as I am concerned, Neal Hilliard is the Lodge.

"* * *

"When I would get the initial $85 such as the $85 I received from O. C. Jones, I would take it down immediately and get a cashier's check in exchange for the check given me by the prospective new member and I would take this money to Neal Hilliard. I did this in O. C. Jones' case. I also took the $111.25 check given to me by O. C. Jones to Neal Hilliard. When I got the money to Neal Hilliard, he would give me my commission immediately. The reason I did this—I had a little larceny in my heart.

"* * * I sold thirty to forty members at an average fee of $170.

"Neal Hilliard told me that I am a black man—but you set up a white lodge and it will be recognized all over by white lodges everywhere and you be sure and tell these people that this lodge will be recognized by lodges everywhere."

Felix Dickson testified that he was Most Worshipful Grand Master of the King Solomon Grand Lodge and that appellant was suspended in 1957 for "unmasonic" conduct and had not been a member after that date. He stated that:

"* * * All other grand lodges in Texas are clandestine lodges but the lodge that I am affiliated with and the Grand Lodge of Texas, which is a white lodge.

"I am aware that there are many other Negro Grand Lodges within the City of Houston, Texas. All of these lodges are clandestine, the same as Neal Hilliard's is."

John H. Crooker, Sr., Houston attorney, testified that he was a Master Mason and had attended the Grand Lodge of Texas for forty-nine years, and that it was the only recognized grand lodge in the state; that he had served as Grand Master of Texas at one time; and also that:

"The National King Solomon Grand Lodge and the Golden Eagle Lodge No. 1 are not recognized as being either a Grand Lodge or a regular lodge or any other kind of lodge by any true Masons. None of these organizations can make a person a Mason. These organizations are not recognized in Masonry and have no power to make a person a Mason regardless of what kind of ceremony that they perform. A person who goes through some kind of ceremony by either of these organizations will not be allowed to visit the meetings in any other Lodge."

Ralph Coppock, Worshipful Master of the Jack Demolay Lodge and also a Houston attorney, testified similarly and stated that it would be a Masonic offense for a true Mason to be affiliated with the Golden Eagle Lodge or with the National King Solomon Grand Lodge.

William Byrd testified that he had joined the lodge at the inducement of Roy Dean Berger, co-owner with appellant of the Golden Eagle Lodge No. 1, and that he was given a "quick initiation" and a card saying he was a Master Mason, and that he paid $85 for the membership. He thereafter worked as a salesman for appellant, being paid on a forty-per-cent-commission basis for each lodge membership sold. He stated that he was told by appellant to tell prospective members that if they joined they would be entitled to go to any lodge in the world.

Appellant testified that "Masonry is and always has been a business to me." He denied that he told salesmen selling memberships to tell prospects they would be accepted in any lodge anywhere, stating that he knew better than that. He admitted that Phipps brought him the initiation fees and he cashed the cashier's checks and gave Phipps his part, but it was his theory that he endorsed the checks as Grand Master of the National King Solomon Grand Lodge and that the money was for the lodge. When asked why cash was used, he answered that the Grand Lodge never had enough money to open a bank account. Appellant testified that he kept no record as to where the money went, because it was supposed to be up to Roy Berger, the co-owner of the lodge, "to keep up with all of this."

The court, in his charge, instructed the jury on the law of principals and charged the jury that the witness A. L. Phipps was an accomplice, and instructed as to the corroboration necessary to convict upon accomplice testimony.

The issue of appellant's guilt was submitted to the jury upon the state's theory of theft by false pretext. Under the court's instruction, the jury was authorized to convict appellant if they found from the evidence, beyond a reasonable doubt, that A. L. Phipps, while acting as a principal with appellant, obtained possession of the $111.25, in money, from O. C. Jones by fraudulently representing to the said Jones that by paying said sum of money he would be a member of a regular Masonic Lodge—which membership would entitle him to sit in any Masonic Lodge located anywhere.

■ We overrule appellant's contention that the evidence is insufficient to support the judgment of conviction.

■ Recently, in Cameron v. State, Tex. Cr.App., 401 S.W.2d 809, this court reaffirmed the rule that a conviction for theft by false pretext may be had upon a general indictment for theft.

■ The fact that the false representations made by Phipps pertained to future happenings did not render the evidence insufficient. It is the rule that false promises or representations as to future happenings by which a person is induced to part with his property may form the basis of the offense of theft by false pretext. 55 Tex.Jur. 2d 294–299, Sec. 18; Johnson v. State, 144 Tex.Cr.R. 392, 162 S.W.2d 980.

■ We also overrule the contention that appellant's conviction for felony theft cannot be sustained because the proof showed that he was guilty of certain misdemeanor offenses denounced by Articles 581 and 582, Vernon's Ann.P.C., relating to false statements and unlawful solicitations of membership in fraternal benefit societies. The fact that the evidence adduced may have shown that in the transaction appellant committed other offenses does not prevent his prosecution and conviction for the offense of felony theft, charged in the indictment. Lewis v. State, 171 Tex.Cr.R. 231, 346 S.W. 2d 608; Vick v. State, Tex.Cr.App., 397 S.W.2d 229.

■ Nor for such reason was the grand jury without authority to return the felony indictment against appellant nor the district court without jurisdiction to try him for the offense charged.

■ Article 1, section 10, of the Texas Constitution, Vernon's Ann.St., makes an indictment by the grand jury the only way—except where circumstances not here in point are present—in which a prosecution for felony theft can be originated. The authority of the grand jury is not limited to felonies. Texas Constitution, Article V, Sec. 17. The Harris County Criminal District Court No. 2 has original jurisdiction over all criminal cases of the grade of felony. Article V, sec. 8, Texas Constitution; Articles 54, 52–25, 52–39, 52–158, C.C.P. of 1925.

Appellant's objection to the court's charge and his requested charges have been considered and reflect no error. The other contentions have also been considered and do not present error.

The judgment is affirmed.

Opinion approved by the Court.

WOODLEY, J., not participating.