Drewey AARON, Jr.,
Petitioner-Appellant,

v.

Walter CAPPS, Warden, Draper Prison,
Elmore, Alabama,
Respondent-Appellee.

No. 74–2526.

United States Court of Appeals,
Fifth Circuit.

Feb. 3, 1975.

Rehearing and Rehearing En Banc
Denied April 2, 1975.

Howard A. Mandell, Charles S. Conley, Montgomery, Ala., for petitioner-appellant.

William J. Baxley, Atty. Gen., David W. Clark, Asst. Atty. Gen., Montgomery, Ala., for respondent-appellee.

Before BELL, AINSWORTH and RONEY, Circuit Judges.

AINSWORTH, Circuit Judge:

Drewey Aaron, a black man, was convicted in 1960 in an Alabama state court for the forcible rape of a white woman. His petition for a writ of habeas corpus herein alleges that he was charged and convicted by grand and petit juries which were unconstitutionally selected, and that he was denied a public trial. District Judge Frank Johnson denied Aaron's application, finding that the failure to assert these issues in the state trial proceedings was a deliberate bypass of state remedies which precluded raising such issues by way of collateral attack. We affirm the denial of the writ for basically the same reasons set forth in Judge Johnson's well-reasoned opinion appended hereto. However, we add some additional comments on each issue.

## I. Waiver of right to challenge the composition of grand and petit juries.

■ In the deposition of Aaron's trial attorney, Solomon S. Seay, he stated that he knew that Alabama law at the time required a challenge to the composition of the jury roll, and that he recognized that failure to enter such a challenge constituted a waiver of that right. Moreover, he stated that the possibility of making such a challenge was discussed with his co-counsel, J. L. Chestnut, Jr., before a decision not to contest the jury composition was made. Seay Deposition at 14–15. While this would seem to be an "intentional relinquishment or abandonment of a known right or privilege" in the classic sense, Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), appellant contends that no genuine waiver of the right to challenge the jury composition occurred. This assertion is based on a series of cases from this circuit which have found exceptional circumstances justifying failure to challenge jury composition where challenges of racial discrimination in jury selection might engender hostility to the defendants or create community hostility toward white attorneys such as would jeopardize their professional standing. See United States ex rel. Goldsby v. Harpole, 5 Cir., 1959, 263 F.2d 71, 82, cert. denied, 361 U.S. 850, 80 S.Ct. 109, 4 L.Ed.2d 89; Whitus v. Balkcom, 5 Cir., 1964, 333 F.2d 496, 498–499, cert. denied, 379 U.S. 931, 85 S.Ct. 329, 13 L.Ed.2d 343; Winters v. Cook, 5 Cir., 1973, 489 F.2d 174 (en banc); Wells v. Wainwright, 5 Cir., 1973, 488 F.2d 522, 525. District Judge Johnson, however, specifically found that Aaron's attorneys were not faced with a "grisly choice" that would trigger application of the Whitus exception to the deliberate bypass rule. In support of that conclusion, we add the following:

1. The dictum in Goldsby that white attorneys in the Deep South often sacrificed their black clients' rights to be tried by a constitutionally selected jury out of fear of community opprobrium or social ostracism has been discredited by the en banc decision in Winters. See 489 F.2d at 178–179. But the assumption, even if viable, would have no validity in this case as Aaron's retained attorneys were black, and not likely to be scorned in their community for doing all possible to insure a fair trial for a fellow black.

2. Attorney Seay stated one of the reasons the jury selection procedure was not challenged was because the Circuit Judges in Montgomery County were members of the county's Jury Supervisors, and he was unwilling to call the integrity of the judges into question by asserting racial discrimination on the part of those entrusted with drawing up the jury rolls. But the state trial judge, Eugene W. Carter, Jr., specifically asked Seay, prior to Aaron's first trial, whether he intended to challenge the jury. Judge Carter stated he did so because he recognized that he would be obligated to recuse himself from the case should such a challenge be entered, because of his membership on the jury board. See 155 So.2d at 335. We note that a challenge to the composition of the jury in Montgomery County was timely entered in Reeves v. State, 264 Ala. 476, 88 So.2d 561 (1956), cert. granted, 352 U.S. 965, 77 S.Ct. 373, 1 L.Ed.2d 321, cert. dismissed, 355 U.S. 368, 78 S.Ct. 363, 2 L.Ed.2d 352 (1958), also a case involving rape of a white woman by a black, and Judge Eugene Carter—the trial judge in Aaron's case—did in fact recuse himself. Thus, we do not find these allegations of suspected judicial hostility well taken.

3. While Seay did state that one of the important factors which induced him not to enter a challenge to the jury was a fear of engendering community hostility that would only create the danger of his client's being tried by an antagonistic jury, he also stated, "I thought I had a shot at the case," i. e., that the defendant might be acquitted. Seay Deposition at 16. Thus, tactical considerations were a part of the decision not to challenge the jury selection procedures.

4. While appellant would portray his attorney as being disinclined to challenge

the jury composition out of fear either that his future career would be jeopardized or that his client would be prejudiced, two factors (in addition to those discussed by Judge Johnson) prompt us to conclude otherwise. First, in 1961, only a year after Aaron's second trial, attorney Seay did in fact challenge the composition of the jury in a case involving a black client. See 155 So.2d at 336. Second, as appellant's present attorney stated to the court below, Mr. Seay "has for the past decade successfully litigated numerous controversial civil rights cases." Under these circumstances, we accept and affirm Judge Johnson's determination that Aaron's attorneys were not in fact presented with a "grisly" or Hobson's choice which precluded them from knowingly and intelligently waiving the client's right to challenge the jury selection procedures in Montgomery County, Alabama.

II. Waiver of right to a public trial.

Prior to the start of the second trial, the trial court, acting pursuant to Article VI, Section 169, Alabama Constitution of 1901,[1] ruled that certain persons be excluded from the trial. The prosecutrix' relatives, the defendant's relatives, all those necessary to the conduct of the trial, other attorneys, defendant's clergyman and the press were allowed in the courtroom; other members of the public were barred. Despite the exclusions, Aaron's attorney stated: "I would say there were quite a few people there. . . . I would say that three-fourths of the courtroom was full." Seay Deposition at 23. Aaron's attorneys did not challenge this action, as an objection to a similar order entered prior to the start of the first trial was addressed and dismissed by the Alabama Supreme Court. Nonetheless, Judge Johnson held that failure to object to the court's action prior to the second trial constituted a waiver of Aaron's right to a public trial.

Although it is clear that a person's right to a public trial can be waived, see Singer v. United States, 380 U.S. 24, 35, 85 S.Ct. 783, 790, 13 L.Ed.2d 630 (1965), we are reluctant to conclude that the failure to make an objection already overruled by the state's highest court and thus clearly futile constituted an actual waiver of Aaron's right to a public trial. Rather, we conclude on the merits of that contention that Aaron was not in fact denied a public trial.

Courts have differed over the propriety of excluding certain persons from criminal trials. Compare Tanksley v. United States, 9 Cir., 1944, 145 F.2d 58, 10 Alaska 443, with Harris v. Stephens, 8 Cir., 1966, 361 F.2d 888, 891, cert. denied, 386 U.S. 964, 87 S.Ct. 1040, 18 L.Ed.2d 113 (1967), and United States v. Geise, 9 Cir., 1958, 262 F.2d 151, cert. denied, 361 U.S. 842, 80 S.Ct. 94, 4 L.Ed.2d 80 (1959) (latter cases holding it proper to close courtrooms to certain spectators in rape trials). As we have previously noted, "The constitutional right to a public trial is not a limitless imperative." Lacaze v. United States, 5 Cir., 1968, 391 F.2d 516, 521. The fact that some members of the public were barred from the courtroom does not necessarily mean that a denial of a public trial has occurred; the "decision must turn on the particular circumstances of the case, and not upon a question-begging because abstract and absolute right to a 'public trial.'" Levine v. United States, 362 U.S. 610, 616–617, 80 S.Ct. 1038, 1043, 4 L.Ed.2d 989 (1960). See also 6 Wigmore on Evidence § 1835, at 338 (3d ed. 1940).

In this case, some members of the public were admitted; the courtroom was at least three-fourths full; the transcript of the trial became public record. Particularly important is the fact that the news media were admitted. The published reports of the trial were lengthy and complete. The defendant's relatives and clergyman were present to

---

1. Section 169 provided:

In all prosecutions for rape and assault with intent to ravish, the court may, in its discretion, exclude from the courtroom all

persons, except such as may be necessary to the conduct of the trial.

The provision was repealed in 1973.

provide moral support and comfort to the accused. In sum, we find none of the secrecy of the proceedings which are condemned by the Sixth Amendment and In re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948); see also, as an example of proceedings incompatible with the demand for public trial, Caudill v. Peyton, 4 Cir., 1966, 368 F.2d 563 (trial conducted in judge's chambers). We conclude that the denial of one's right to a public trial is not at issue where "[t]here was no in camera or secret trial. [The trial] was held in a public courtroom with attorneys, court reporters, court attendants and at least some outsiders present." United States ex rel. Bruno v. Herold, 2 Cir., 1969, 408 F.2d 125, 127, cert. denied, 397 U.S. 957, 90 S.Ct. 947, 25 L.Ed.2d 141 (1970). "Certainly under modern conditions, when friends of the accused, the representatives of the press, and those necessary to the proper conduct of the trial are present, the defendant receives every safeguard insured by a trial open to the general public." Note, 45 Mich.L.Rev. 474, 479 (1937).

Affirmed.

## APPENDIX

### Opinion of District Judge Frank M. Johnson, Jr.

### OPINION

Drewey Aaron, a black man, was convicted[1] in 1960 in a state court in Alabama upon an indictment charging rape of a white woman, and a death sentence was imposed. Aaron petitions this Court for a writ of habeas corpus,[2] alleging numerous errors of constitutional dimension which he claims entitle him to relief. This Court, in its order filed on November 26, 1973, granted petitioner a hearing on three issues: first, whether petitioner effectively waived his right to grand and petit juries selected without regard to race; second, whether the grand and petit juries which indicted and convicted petitioner were unconstitutionally selected; and third, whether petitioner was denied his right to a public trial. The case is submitted upon the pleadings, briefs, affidavits, depositions, and stipulations filed in this case.

### I. Applicable Law

As an initial matter, it is abundantly clear that a state may not constitutional-

---

1. Aaron was first convicted in the state circuit court in Montgomery, Alabama, in 1959. His conviction was reversed by the Alabama Supreme Court in 1960 upon an evidentiary error. Aaron v. State, 271 Ala. 70, 122 So.2d 360 (1960). Upon remand, Aaron was again convicted, and his second conviction was affirmed. Aaron v. State, 273 Ala. 337, 139 So.2d 309, cert. denied, 371 U.S. 846, 83 S.Ct. 81, 9 L.Ed.2d 82 (1962). Aaron's petition for leave to file a petition for writ of error coram nobis, dealing with the jury exclusion issue, was denied by the Alabama Supreme Court. Ex parte Aaron, 275 Ala. 377, 155 So.2d 334, cert. denied, 375 U.S. 898, 84 S.Ct. 177, 11 L.Ed.2d 126 (1963). A supplemental application for leave to petition for writ of error coram nobis was denied on February 4, 1965.

2. Aaron filed his original petition in this Court on February 15, 1965. This Court on that date issued a stay of execution and stayed further proceedings to allow Aaron to present further matters to the state courts. On May 17, 1966, after leave obtained from the Supreme Court of Alabama, Aaron petitioned the state trial court for a writ of error coram nobis, which was dismissed by the trial court. That dismissal was reversed by the State Supreme Court to allow Aaron to obtain a hearing in the trial court on Witherspoon issues. Aaron v. State, 283 Ala. 52, 214 So.2d 327 (1968). The state trial court denied relief on the Witherspoon issue on June 25, 1970. Aaron appealed to the Alabama Court of Criminal Appeals. On August 24, 1972, this Court declared void, following Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), the sentence of death imposed upon Aaron. On March 20, 1973, the Alabama Court of Criminal Appeals commuted Aaron's death sentence to one of life imprisonment. Aaron v. State, 49 Ala. App. 402, 272 So.2d 609 (Ct.Crim.App.1973). The Witherspoon issue was mooted by the death penalty holdings. On June 13, 1973, this Court ordered the State of Alabama to show cause why this Court should not issue the writ of habeas corpus prayed for by Aaron.

ly require defendants to be tried to a jury from which citizens have been systematically excluded on account of their race. Peters v. Kiff, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972); Arnold v. North Carolina, 376 U.S. 773, 84 S.Ct. 1032, 12 L.Ed.2d 77 (1964); Reece v. Georgia, 350 U.S. 85, 76 S.Ct. 167, 100 L.Ed. 77 (1955). It is also clear that whatever rights Aaron has as to this issue are not lost merely by the passage of time. Hamilton v. Watkins, 436 F.2d 1323 (5th Cir. 1970).

Nevertheless, a defendant's right to be tried by a jury constituted without regard to race is a right which may in certain circumstances be waived. In this respect, there are two distinct varieties of waiver which must be considered. The first is a procedural or fictitious waiver, which is a function of criminal procedure and not of constitutional law. Procedural waiver is deemed to have occurred when issues are not presented to the trial court at a specified time or in a specified manner. ABA Project on Standards for Criminal Justice, Post-Conviction Remedies 88 (Commentary) (Approved Draft, 1968) (hereafter cited as "Post-Conviction Remedies"). This doctrine of procedural waiver is recognized in criminal cases in the State of Alabama and in the federal courts.[3] In particular, a defendant in Alabama who does not present a timely and proper[4] challenge to the composition of the grand or petit jury is deemed under Alabama law to have waived that objection. Ex parte Seals, 271 Ala. 622, 126 So.2d 474 (1961). Under this rule of procedural waiver, Aaron was held by the Alabama Supreme Court to have waived his right to challenge the composition of the grand jury which indicted him and the petit jury which tried him. Ex parte Aaron, 275 Ala. 377, 155 So.2d 334, cert. denied, 375 U.S. 898, 84 S.Ct. 177, 11 L.Ed.2d 126 (1963). When state procedural waiver is held to have occurred, it may be an adequate state ground, to remain undisturbed by the United States Supreme Court upon certiorari in cases of direct review or review of state post-conviction remedies. Parker v. North Carolina, 397 U.S. 790, 798, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970).

There is, however, a second variety of waiver, one which is a matter of federal constitutional law. This *genuine* waiver involves an active, knowing choice, an intelligent and understanding decision to forego certain rights. Post-Conviction Remedies at 88–89. This form of waiver was defined in Johnson v. Zerbst as "an intentional relinquishment or abandonment of a known right or privilege." 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). While state procedural waiver may remain undisturbed on appeal, a federal court in a habeas corpus action has the power to pierce the procedural waiver and to require a show-

---

**3.** Rule 12(b)(2) of the Federal Rules of Criminal Procedure establishes the fictitious waiver rule in federal courts:

> Defenses and objections based on defects in the institution of the prosecution . . . may be raised only by motion before trial . . . Failure to present any such defense or objection as herein provided constitutes a waiver thereof, but the court for cause shown may grant relief from the waiver.

In Davis v. United States, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973), the Supreme Court held that a defendant who did not make a timely objection waives it, "in the absence of the showing of 'cause' which that rule requires." 411 U.S. at 242, 93 S.Ct. at 1583. The challenge in Davis was to the composition of the grand jury.

This Court views Alabama law on this point as holding that, once a right is "waived" procedurally, it is permanently waived according to state law. The Constitution requires that in certain instances, for instance where a "grisly choice" [discussed *infra*] may be proved to have been required, any procedural waiver rule must implicitly contain a requirement that the waiver be set aside "for cause shown." In Davis, cause simply was not shown.

**4.** In Alabama criminal practice, the formation of the trial venire is properly attacked by a written motion to quash the venire, while the method of attacking the composition of the grand jury has been both plea in abatement or motion to quash the indictment. M. McGee, Alabama Criminal Practice 201–02 (1969).

ing of a *Zerbst* waiver. Fay v. Noia, 372 U.S. 391, 425, 429–430, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). This Court is asked by petitioner to hold that the procedural waiver made by counsel in this case does not serve to waive his right to trial before a constitutionally-selected jury.

It might have been thought until recently that the defendant himself had to make a personal *Zerbst* waiver of his right to a constitutional petit jury. Fay v. Noia was quite vague concerning the proper party, whether the attorney or the defendant, to make these procedural choices, noting only that "[a] choice made by counsel not participated in by the petitioner does not automatically bar relief." Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 849, 9 L.Ed.2d 837 (1963). However, the Supreme Court in Henry v. Mississippi noted that counsel's choice of strategy might "amount to a waiver binding on petitioner [which] would preclude him from a decision on the merits of his federal claim . . . ." Henry v. Mississippi, 379 U.S. 443, 451, 85 S.Ct. 564, 569, 13 L.Ed.2d 408 (1965). It is now clear that

> a constitutional objection to the composition of a grand or petit jury may be waived by an attorney without consultation with his client where there is "conscientious consideration of that course of action which would be best for his client's cause".

Winters v. Cook, 489 F.2d 174, 180 (5th Cir. 1973) (en banc). Therefore, a "waiver" by counsel is not to be invalidated in circumstances like these merely because the attorney did not explain the decision to, or consult with, his client.

Here, Aaron's counsel effected the procedural waiver of Aaron's right to an indictment by and trial before properly constituted grand and petit juries. There are three groups of situations in which waiver by the attorney will not be binding upon the petitioner. The first group involves situations in which the lawyer has, through some personal fault or error, failed to give competent representation to the defendant. These are cases in which there is a showing of "fraud, or gross negligence or incompetence on the part of the defendant's attorney." Winters v. Cook, 489 F.2d 174, 178 (5th Cir. 1973) (en banc). In such a case, the petitioner must be allowed to effect or reject a personal waiver of the right involved. There is here no showing or claim of gross negligence or incompetence. Second, a personal waiver by defendant is necessary in cases in which "an inherently personal right of fundamental importance is involved." *Id.* at 178. It is now clear in this circuit, after *Winters,* that

> the right to be indicted or tried by a constitutionally composed jury is not one of the rights traditionally considered so inherently personal that only the defendant may waive it.

*Id.* at 180. Third, and most pertinent to this case, the waiver by an attorney may be held invalid and not binding upon his client if counsel was forced to make what is termed a "grisly choice."[5] The "grisly choice" theory first appeared as an exception to the concept of "deliberate by-pass" in the law applied in habeas corpus cases. The deliberate by-pass rule first appeared in Fay v. Noia:

> If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state

---

**5.** The recent case of Winters v. Cook does not reach the issue of the "grisly choice":

> [W]e need not reach the petit jury issue either. Winters' counsel never faced this choice. His decision to use the potential of raising such an objection to assure his

client safe passage past the hazard of a death sentence obviated any need to make the "grisly choice" as to the jury he did not face.

489 F.2d at 179.

courts refused to entertain his federal claims on the merits . . . .

372 U.S. at 439, 83 S.Ct. at 849. *Accord,* Henry v. Mississippi, 379 U.S. 443, 451–452, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965) (failure to observe state "contemporaneous objection" rule a deliberate by-pass). Thus it is clear that if a decision to waive certain rights is made for strategic reasons, a deliberate by-pass has been effected, and the federal district court on habeas corpus may properly hold that the procedural waiver is effective.

However, while a strategic decision upon trial may be a deliberate by-pass and thus an effective waiver, courts have attempted to make a distinction between a strategic waiver and what is termed a "grisly choice," a phrase excerpted from Fay v. Noia, 372 U.S. 391, 440, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).[6] A "deliberate by-pass" is a valid waiver under *Noia* principles; a "grisly choice" is not. Thus, we must consider whether Aaron's trial counsel in this case was faced with a "grisly choice," or whether he made a "deliberate by-pass" of Aaron's right to challenge the composition of the petit and grand juries.

The United States Court of Appeals for this circuit noted some two years after Aaron's second conviction that an attorney in a Southern setting faces at least a "Hobson's choice,"[7] when he is deciding whether to challenge the composition of a trial jury. While in doing so he would be pursuing his client's undoubted constitutional right, there would be the strong possibility of serious prejudice *to the defendant*:

If the segregation policy in a county is so strong that Negroes are systematically excluded from the jury system, community hostility would be generated against any "troublemaker" who would attempt to upset the all-white make-up of the jury system. Such hostility would *directly affect the Negro defendants.* . . .

Whitus v. Balkcom, 333 F.2d 496, 506–507 (5th Cir. 1964) (emphasis added). That court noted that "[t]he effect will, of course, be accentuated if the case is one involving . . . the rape of a white woman by a Negro . . . ." *Id.* This, of course, is such a case. The court in *Whitus* held that

the doctrine of fictitious waiver is unacceptable when the state compels an accused person to choose between an unfairly constituted jury and a prejudiced jury . . . We hold that the State could not constitutionally require the petitioners to make a guess and a gamble between two evils.

*Id.* at 510. The Supreme Court in Henry v. Mississippi approvingly cited *Whitus* as an exceptional circumstance involving a grisly choice. 379 U.S. at 451–452, 85 S.Ct. 564. Numerous courts[8] and commentators[9] have agreed that a circumstance of this nature may in some circumstances constitute a grisly choice to be made by defendants or their counsel.

Formerly, it appeared that a court might have the power to

take judicial notice that white lawyers in this circuit almost always will sacrifice their Negro clients' rights to be tried by a constitutionally selected

---

**6.** Noia's grisly choice, it will be recalled, was between resting content with a life sentence or appealing and taking a chance of execution' upon retrial and conviction.

**7.** The term "grisly choice," as a legal term of art, did not come into use until 1963, in Fay v. Noia.

**8.** Hamilton v. Watkins, 436 F.2d 1323, 1326 (5th Cir. 1970); McNeil v. North Carolina, 368 F.2d 313, 315 (4th Cir. 1966); Cobb v. Balkcom, 339 F.2d 95, 98–99 (5th Cir. 1964); Whitus v. Balkcom, 333 F.2d 496, 498–499 (5th Cir. 1964); United States ex rel. Seals v.

Wiman, 304 F.2d 53, 69 (5th Cir. 1962), cert. denied, 372 U.S. 924, 83 S.Ct. 741, 9 L.Ed.2d 729 (1963); United States ex rel. Goldsby v. Harpole, 263 F.2d 71, 82 (5th Cir.), cert. denied, 361 U.S. 838, 80 S.Ct. 58, 4 L.Ed.2d 78 (1959).

**9.** Developments in the Law—Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1108 (1970); Note, Criminal Waiver: The Requirements of Personal Participation, Competence and Legitimate State Interest, 54 Cal.L.Rev. 1262, 1270 (1966); Note, 16 Ala.L.Rev. 117, 121 (1963) (case note discussing one of Aaron's appeals).

jury out of a fear of community opprobrium or social ostracism.

*Winters v. Cook,* 489 F.2d 174, 178 (5th Cir. 1973) (en banc).[10] It is now abundantly clear that a habeas petitioner *must offer evidence amounting to prima facie proof* that he or his attorney faced a grisly choice and did not therefore make a deliberate by-pass of his right to challenge the composition of the jury.

## II. *Findings of Fact*

Soon after petitioner's arrest, his wife approached Solomon S. Seay, Jr., Esq., a black attorney in Montgomery. After initially suggesting to Mrs. Aaron that she retain more experienced trial counsel, Mr. Seay agreed to take the case. Mr. Seay associated J. L. Chesnut, Esq., a young black attorney from Selma.

Aaron's attorneys declined to challenge the jury selection system at either trial. They testified on deposition in this case that their primary reason for failing to challenge the jury selection system was fear of prejudicing the jury and the court against their client.

While such a decision at Aaron's *first* trial might arguably have been a "grisly choice," a point which this Court need not decide, the first trial resulted in conviction. After reversal, it should have been apparent to the attorneys that since the waiver in the first trial had been of little benefit (the verdict being one of conviction), the value accruing to the client by their passive policy was gossamer at best. At least at that point, after the experience of one conviction, the attorneys' failure to attack the composition of the grand and petit juries became a deliberate by-pass and not a grisly choice. Therefore Aaron must remain bound by the choice made by counsel at the trial of his case.

It is therefore unnecessary to decide whether the jury system as it operated at the time of Aaron's second conviction was unconstitutional.

## III. *Public Trial*

Petitioner contends that he was, during his second trial, denied his constitutional right to a public trial. At trial, attendance was restricted to relatives, counsel, a minister, court officials and newspapermen.

The Sixth Amendment to the United States Constitution guarantees to an accused the right to a "public trial." This limitation operates upon the states by virtue of its incorporation into the due process clause of the Fourteenth Amendment. *In re Oliver,* 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948). The guidelines of this right to a public trial are unclear. "[W]ithout exception all courts have held that an accused is at the very least entitled to have his friends, relatives and counsel present, no matter with what offense he may be charged." *Id.* at 271–272, 68 S.Ct. at 507.

At petitioner's second trial, the courtroom was, according to the testimony of Mr. Seay, about three-quarters full and contained several of Aaron's friends. The trial judge excluded all save a very few specifically-allowed spectators. Mr. Seay testified that he did not object at the second trial since he had objected and had been overruled at the first trial and the trial court had been affirmed on that point. *See* Aaron v. State, 271 Ala. 70, 78, 122 So.2d 360 (1960).

This exclusion was accomplished pursuant to the Alabama Constitution, which provides in part that "[i]n all prosecutions for rape and assault with intent to ravish, the court *may, in its discretion,* exclude from the courtroom all persons, except such as may be necessary in the conduct of the trial." Ala.Const. § 169 (1901) (emphasis added).

**10.** The idea that courts could take judicial notice of the existence of a grisly choice apparently rose from *Goldsby,* in which the Court held that

> [a]s Judges of a Circuit comprising six states of the deep South, we think that it is our duty to take judicial notice that law-

> yers residing in many southern jurisdictions rarely, almost to the point of never, raise the issue of systematic exclusion of Negroes from juries.

United States ex rel. Goldsby v. Harpole, 263 F.2d 71, 82 (5th Cir.), cert. denied, 361 U.S. 850, 80 S.Ct. 109, 4 L.Ed.2d 89 (1959).

It is not necessary in this case to decide whether the Alabama Constitutional provision is unconstitutional on its face or as applied. Petitioner's counsel were aware of the need to assert his constitutional right to a public trial; they did so at the first trial and pressed the point on appeal. Their failure to assert this right at the second trial can only be termed a deliberate by-pass. Therefore, Aaron is not entitled to habeas corpus relief on this point.