**Sol Shearn ROVINSKY,**
**Petitioner-Appellant,**

v.

**Dan V. McKASKLE, Acting Director,**
**Texas Department of Corrections,**
**Respondent-Appellee.**

No. 82–1577.

United States Court of Appeals,
Fifth Circuit.

Jan. 3, 1984.

Opinion on Rehearing En Banc
March 12, 1984.

Ronald L. Goranson, Dallas, Tex., for petitioner-appellant.

Charles A. Palmer, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before RUBIN, TATE, and JOLLY, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Without advancing any reasons for doing so, a state court conducting a criminal trial held a hearing in chambers on the state's motion to restrict the cross-examination of a prosecution witness despite the defendant's objection to the procedure as violating

his right to a public trial, imminent in the process due him under the fourteenth amendment. Following the defendant's conviction, a federal district court denied him a writ of habeas corpus. Reversing the district court, we hold that the right to a public trial specifically guaranteed by the sixth amendment and incorporated into the due process clause of the fourteenth amendment forbids state courts to conduct hearings in camera on matters arising in the course of a criminal trial, absent overriding need to foreclose public attendance, articulated in the court's findings at the time of closure.

Sol Shearn Rovinsky was charged with theft by the State of Texas and was tried by jury in state court. Before trial, the state filed motions to restrict the cross-examination of two witnesses, Bloom and Lipshy. The court did not act on these motions until after the trial had commenced. During the trial, Bloom testified as a prosecution witness. Over Rovinsky's objection, the court then heard in chambers the state's motion to restrict cross-examination of Bloom. Later, after Lipshy testified, the court heard the motion to limit his cross-examination in chambers. After the court granted this motion in part, Rovinsky waived his right to a public trial, requested that the jury be dismissed, and asked that all further proceedings take place in chambers. Rovinsky now contends that his conviction should be reversed because the motion to limit Bloom's cross-examination was not heard in open court.

The fourteenth amendment guarantees defendants in state prosecutions a public trial by incorporating the rights enumerated in the sixth amendment.[1] By subjecting criminal trials to "contemporaneous review in the forum of public opinion," this right prevents the abuse of judicial power, discourages perjury, encourages unidentified potential witnesses to come forward, and instills in the public the perception that their courts are acting fairly.[2] The sixth amendment right is personal to the accused; the right of the public and the press to attend criminal trials derives instead from the first amendment.[3] Because the public's first amendment right and the defendant's sixth amendment right serve common interests, however, the legal principles appropriate for enforcing one are usually applicable to the other.[4] We therefore seek guidance from the Supreme Court's recent decisions recognizing and refining the first amendment right to attend criminal trials as well as from established jurisprudence regarding the sixth amendment right to a public trial.

Assuming *arguendo* that the public-trial right applies to a hearing on a motion in limine, the state argues first that Rovinsky waived this right by failing to object to closure of the hearing on the second motion (to limit cross-examination of Lipshy) and by later requesting that the remainder of the trial be held in chambers. Failure to object to a private hearing, however, does not waive the right to be tried publicly when the futility of the objection is made

1. *In Re Oliver,* 333 U.S. 257, 266–73, 68 S.Ct. 499, 504–07, 92 L.Ed. 682, 690–94 (1948).

2. *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 569–71, 100 S.Ct. 2814, 2823–24, 65 L.Ed.2d 973 (1980) (opinion of Burger, C.J.); *Id.,* at 597, 100 S.Ct. at 2838 (Brennan, J., concurring); *In Re Oliver,* 333 U.S. at 270, 68 S.Ct. at 506, 92 L.Ed. at 692; *United States v. Chagra,* 701 F.2d 354, 363 (5th Cir.1983).

3. *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 579–82, 100 S.Ct. 2814, 2829–30, 65 L.Ed.2d 973, 991–93 (1980) (public and press enjoy first amendment right to attend criminal trials); *Gannett Co. v. DePasquale,* 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979) (reporter enjoys no sixth amendment right to at-

tend pretrial suppression hearing from which defendant requests press and public be excluded).

4. Note, *Evaluating Court Closures After* Richmond Newspapers: *Using Sixth Amendment Standards to Enforce a First Amendment Right,* 50 Geo.Wash.L.Rev. 304 (1982); *see also* Note, *Protecting Child Rape Victims from the Public and Press after* Globe Newspaper *and* Cox Broadcasting, 51 Geo.Wash.L.Rev. 269, 277–78 (1983) (public-trial-right analyses for first amendment and sixth amendment claims nearly identical) [hereinafter cited as *Protecting Victims from the Public and Press*].

apparent by its previous rejection.[5] We cannot construe failure to continue to object in the face of evident futility as the waiver of a previously asserted right.

We are also unpersuaded by the argument that Rovinsky's request to conduct what remained of the trial in chambers relates back to hearings already conducted in chambers over his objection.[6] For the waiver of a constitutional right is not lightly inferred: rights granted to ensure a fair trial and reliability in the fact-finding process can be waived only by voluntary, intentional, and knowing relinquishment.[7] Rovinsky had no reason to believe that, by waiving his right to have what remained of his trial conducted in public, he would relinquish his right to have previous hearings in public and abandon the objection already made to their closure. Absent an express renunciation of his prior objection, there is no basis to infer that Rovinsky intended to waive the public-trial right as to hearings conducted before he requested closure.

The state argues that, even if they were not waived, Rovinsky's rights under the sixth and fourteenth amend-

ments were not violated, because the purpose of a motion in limine is to prevent embarrassing and prejudicial cross-examination. The right to a public trial is not absolute: limitations on public attendance may be imposed so long as they are no more exclusive than necessary to protect a state interest that outweighs the defendant's interest in public scrutiny of the proceedings.[8] Indeed, the protection of witnesses from embarrassment or intimidation so extreme that it would traumatize them or render them unable to testify is a state interest sufficiently weighty to justify partial or complete exclusion of the press and public.[9] But the Supreme Court made clear in *Globe Newspaper Co. v. Superior Court* that no state interest, however compelling, can sustain the exclusion of press and public from part of a trial, absent findings of necessity articulated on the record.[10] Before closing a trial, the judge must state his reasons for doing so on the record both to enable the public and the accused to know why the courtroom was closed and to enable appellate courts to review the adequacy of the reasons given.[11]

**5.** *Aaron v. Capps,* 507 F.2d 685, 687 (1975).

**6.** We need not decide whether a defendant can, before his trial commences, waive his right to have some parts of it conducted in public while asserting the right as to other parts of the trial.

**7.** *Schneckloth v. Bustamonte,* 412 U.S. 218, 235–37, 93 S.Ct. 2041, 2052–53, 36 L.Ed.2d 854, 867–68 (1973).

**8.** *Protecting Young Victims from the Public and Press, supra* note 4 at 278; *cf., Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 606–09, 102 S.Ct. 2613, 2620–22, 73 L.Ed.2d 248, 257–59 (1982) (closure violates press's and public's right to attend criminal trials if more restrictive than necessary to protect compelling state interest); *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 579–82, 100 S.Ct. 2814, 2829–30, 65 L.Ed.2d 973, 991–93 (1980) (absent an overriding interest, closure violates right to attend criminal trials).

**9.** *Globe,* 102 S.Ct. at 2621; *see Aaron v. Capps,* 507 F.2d 685 (5th Cir.1975); *Douglas v. Wainwright,* 714 F.2d 1532 (11th Cir.1983); *United States ex rel. Latimore v. Sielaff,* 561 F.2d 691 (7th Cir.1977); *United States v. Eisner,* 533 F.2d 987, 989 (6th Cir.1976); *United States ex rel Bruno v. Herold,* 408 F.2d 125 (2d Cir.1969).

**10.** 457 U.S. at 608–09, 102 S.Ct. at 2621–22, 73 L.Ed.2d at 258–59; *accord Richmond Newspa-*

*pers,* 448 U.S. at 579–82, 100 S.Ct. at 2829–30 (opinion of Burger, C.J.) ("Absent an overriding interest *articulated in findings,* the trial of a criminal case must be open to the public.") (emphasis added); *cf., Nebraska Press Association v. Stuart,* 427 U.S. 539, 562–70, 96 S.Ct. 2791, 2804–08, 49 L.Ed.2d 683, 699–704 (1976) (order restricting publication of events at trial violates first amendment absent correct finding, articulated on the record, that gag order is least-restrictive means of protecting state interest in providing defendant a fair trial). In *Globe,* the Court acknowledged that the protection of young rape victims from trauma due to public testimony is a compelling state interest. Nevertheless, the Court invalidated a statute mandating the exclusion of press and public from the courtroom whenever young victims testify, because the statute did not require an individualized finding of necessity before closure.

In neither *Globe, Richmond Newspapers,* nor *Nebraska Press Association* did the Court remand for findings as to necessity; it reversed the pertinent rulings because adequate findings had not been made before hearings were closed or publication prohibited.

**11.** Our opinion upholding the exclusion of the public other than reporters, clergymen, counsel, courtroom personnel, and relatives of the

■ The trial court in this case gave no reason for conducting private hearings on the motions and made no record finding of need to do so. Neither the defendant, nor the public, nor an appellate court can evaluate the propriety of conducting these proceedings behind closed doors. Because we cannot determine that closure was either necessary or narrowly tailored to protect a compelling state interest, we hold that it violated Rovinsky's right to a public trial.

■ Sidebar conferences in which the defendant's counsel participates without objection do not violate the right to a public trial.[12] The Supreme Court has been careful to include in its opinions recognizing a public right to attend criminal trials caveats that cast doubt on the press's ability to use the right to intrude uninvited into conferences at the bench and in chambers.[13] But the sixth amendment right cannot be denied simply because, as a matter of procedure, the prosecution's motion was made before the trial began. The right to a public trial does not turn on whether the inquiry of a hearing is factual or doctrinal, substantive or procedural, but on the relationship of the issue raised at the hearing to the merits of the charge, the outcome of the prosecution, and the integrity of the administration of justice.[14] The right to a public trial is not limited to issues that arise after a jury is sworn or times when the jury is present. It extends at least to those pre-trial hearings that are an integral part of the trial, such as jury selection and motions to suppress evidence.[15]

Here, indeed, the motions were not heard before a jury was impanelled but during the course of trial. Any necessity that the motions be heard outside the jury's presence did not require that they be heard behind closed doors. Prejudice could readily have been prevented without excluding the press and public by, for example, sequestering the jury.[16]

That the defendant can show no prejudice as a result of the denial of a public trial is inconsequential. Whether prejudice need be shown may once have been a subject of controversy,[17] but the requirement has now been rejected uniformly by federal courts.[18] "[I]t would be difficult, if not impossible, ... for a defendant to point to any definite, personal injury. To require him to do so would impair or destroy the safeguard."[19]

■ The right to a public trial is prophylactic. It is not merely a safeguard against unfair conviction. "Open trials play a fundamental role in furthering the efforts of our judicial system to assure the criminal defendant a fair and accurate adjudication of guilt or innocence."[20] A public trial protects the right of the accused to have the public know what happened in court; to let the citizenry weigh his guilt or

victim and defendant in *Aaron v. Capps,* 507 F.2d 685 (5th Cir.1975), does not state whether a record finding of necessity preceded partial closure. We are aware of no decisions rendered by the Supreme Court or the Fifth Circuit since *Globe,* however, upholding a closure order absent such a finding.

**12.** *Steiner v. United States,* 134 F.2d 931 (5th Cir.1943).

**13.** *Globe,* 457 U.S. at 609 n. 25, 102 S.Ct. at 2622 n. 25, 73 L.Ed.2d at 259 n. 25; *Richmond Newspapers,* 448 U.S. at 598 n. 23, 100 S.Ct. at 2839 n. 23, 65 L.Ed.2d at 1003 n. 23 (Brennan, J., concurring).

**14.** *Gannett Co. v. DePasquale,* 443 U.S. 368, 433–37, 99 S.Ct. 2898, 2933–35, 61 L.Ed.2d 608, 655–57 (1979) (Blackmun, J., concurring in part and dissenting in part).

**15.** *Id.* We have upheld, for example, the right of press and public to attend hearings conducted on a pretrial motion to reduce bail. *United States v. Chagra,* 701 F.2d 354 (5th Cir.1983).

**16.** See *Richmond Newspapers,* 448 U.S. at 579, 100 S.Ct. at 2829, 65 L.Ed.2d at 991; *Nebraska Press Association,* 427 U.S. at 562–66, 96 S.Ct. at 2804–06, 49 L.Ed.2d at 699–701.

**17.** See Radin, *The Right to a Public Trial,* 6 Temple L.Q. 381, 384–86 (1932).

**18.** *United States v. Hernandez,* 608 F.2d 741, 747 (9th Cir.1979). *Martineau v. Perrin,* 601 F.2d 1196, 1198 (1st Cir.1979); *United States ex rel Latimore v. Sielaff,* 561 F.2d 691, 694 (7th Cir.1977); *United States v. Eisner,* 533 F.2d 987, 993 (6th Cir.1976); *United States ex rel Bennett v. Rundle,* 419 F.2d 599, 608 (3d Cir.1969).

**19.** *United States v. Kobli,* 172 F.2d 919, 921 (3d Cir.1949); *accord Martineau v. Perrin,* 601 F.2d 1196, 1198 (1st Cir.1979).

**20.** *Richmond Newspapers,* 448 U.S. at 594, 100 S.Ct. at 2836, 65 L.Ed.2d at 1001 (Brennan, J., concurring) (citation omitted).

innocence for itself, whatever the jury verdict; to assure that the procedures employed are fair. Thus, the right is both primary and instrumental: not merely a method to assure that nothing untoward is done clandestinely but a guarantee against the very conduct of private hearings. It is "a check on judicial conduct and tends to improve the performance both of the parties and of the judiciary."[21] Even absent a showing of prejudice, infringement of the right to a public trial exacts reversal as the remedy.

For these reasons the judgment of the district court is REVERSED and the case is REMANDED with instructions to the district court to grant the writ of habeas corpus, unless the state shall again try Rovinsky within a reasonable period to be set by the district court.

E. GRADY JOLLY, Circuit Judge, dissenting:

I respectfully dissent from the panel's holding that the petitioner must be granted habeas relief solely because the trial judge failed to articulate his reasons for holding in camera the hearing on the state's motion to limit cross-examination of a prosecution witness. The relevant precedents do not compel this result.

That the judge failed to articulate his reasons does not focus on the relevant question necessary to determine whether habeas relief should be granted; yet this is the basis upon which the majority rests its opinion and directs habeas relief. The question here is whether the petitioner's Sixth Amendment rights were violated by excluding the public from the hearing on an evidentiary question.

The majority concedes that the criminal defendant is not entitled to a public trial in every case on every issue as an absolute right. The state trial court here, as far as we know, may well have acted within its discretion in holding the motion in chambers. Thus, it may well be that the constitutional rights of this petitioner have *not* been violated at all. At this point, we simply do not know because the trial judge did not, as he should have, articulate his reasons for excluding the public. Yet, with no assurance that any constitutional right of the petitioner has been violated, the majority sets aside the state conviction and directs habeas relief be granted.

The sensible approach, fair to both the petitioner and the state, is to remand this case to the district court to hold a hearing to determine whether the state trial judge abused his discretion. Once such a record is made, an intelligent and informed judgment can be made as to whether the petitioner was deprived of a constitutional right.

Because the majority goes much farther than is necessary to protect this petitioner's constitutional rights, because its holding is not required by any precedents and because it disregards the legitimate interests of the state and of justice, I dissent.

### ON SUGGESTION FOR REHEARING EN BANC

Before RUBIN, TATE and JOLLY, Circuit Judges.

#### PER CURIAM:

In chambers the state's two witnesses—at least one of whom was a key witness—were examined at length. We express no opinion about whether the same result would be required if the court in chambers had heard only oral agrument on points of law. Judge Jolly, however, adheres to his prior dissent.

Treating the suggestion for rehearing en banc as a petition for panel rehearing, it is ordered that the petition for panel rehearing is DENIED. No member of the panel or Judge in regular active service of this court having requested that the Court be polled on rehearing en banc (Federal Rules of Appellate Procedure and Local Rule 35), the Suggestion for Rehearing En Banc is DENIED.

---

21. *United States v. Chagra,* 701 F.2d 354, 363 (5th Cir.1983).