Robert MOSBY, Appellant,

v.

STATE of Texas, Appellee.

No. 13–84–189–CR.

Court of Appeals of Texas, Corpus Christi.

Oct. 31, 1985.

On Rehearing Dec. 12, 1985.

Carl Lewis, Corpus Christi, for appellant.

Grant Jones, Corpus Christi, for appellee.

Before NYE, C.J., and SEERDEN and BENAVIDES, JJ.

## OPINION

SEERDEN, Justice.

This is an appeal from a conviction for the felony offense of sexual abuse of a child. A jury assessed punishment of five years' imprisonment. Appellant does not challenge the sufficiency of the evidence to support the conviction. We reverse the conviction and remand.

In his first ground of error, appellant complains of the admission into evidence of conversations between himself and Dr. Kay Nelson, a psychologist. Dr. Nelson is a family counselor. She is a certified sex therapist and is licensed by the State of Texas as a professional counselor. She talked to appellant and his wife, beginning in late March, 1983, and ending in May, 1983. The conversations between Dr. Nelson and appellant were in regard to charges of sexual abuse of his stepdaughter and were characterized as in the nature of counseling and therapy sessions. During these sessions, Dr. Nelson testified that appellant admitted to her that he committed the offense with which he is charged in this case.

The prosecutrix testified that the offense occurred. Her ten year old brother testified. With the use of dolls he demonstrated that on an unspecified occasion he had seen the appellant and the prosecutrix in his mother's room sitting together naked on the bed. He testified that no one else was in the room. After a conference with the State's attorney during a recess he again recounted this occasion and demonstrated with the dolls again. The second demonstration showed the prosecutrix sitting on appellant's face. In addition, he testified his mother was also present and demonstrated that she was laying naked on the bed with appellant and the prosecutrix.

The appellant denied the commission of the offense. The nineteen year old sister of prosecutrix testified she had lived with appellant and the family during the time of the alleged offense and was unaware of any improper sexual conduct on appellant's part. Dr. Nelson's testimony was obviously harmful to appellant and if not admissible because of the claim of privilege, its admission caused reversible error.

Appellant objected to Dr. Nelson testifying, asserting that the conversations were privileged as communications between a patient/client and a professional as defined in TEX.REV.CIV.STAT.ANN. art. 5561h (Vernon 1964) and that no exception to the privilege of confidentiality exists. The State concedes that the relationship in this case is covered by the language of the statute but points out that no such privilege is mentioned in TEX.CODE CRIM. PROC.ANN. art. 38.10 which defines who are competent witnesses in criminal cases. The State's only contention before this

Court is that there is a conflict between the two statutes, and therefore the code of criminal procedure governs and the privilege created by the civil statute is inapplicable. We find no such conflict.

Article 5561h provides the confidentiality of mental health records and also provides a number of exceptions to such privilege. *See* Section 4 of the act. We see no conflict between such civil statute and the provisions of 38.10. This matter was considered in *Tumlinson v. State*, 663 S.W.2d 539, 543–544 (Tex.App.—Dallas 1983, pet. ref'd) when it stated:

> "Rules of evidence prescribed in our civil statutes, where applicable, govern in criminal actions when not in conflict with provisions of the Texas Penal Code, or Texas Code of Criminal Procedure. (TEX.CODE CRIM.PROC.ANN. art. 38.-02 (Vernon 1979). Further, no evidence obtained in violation of the laws of the State of Texas shall be admitted in evidence against the accused in the trial of a criminal case where proper objection is timely raised. TEX.CODE CRIM.PROC. ANN. art. 38.23 (Vernon 1979)."

The Dallas Court then applied art. 5561h to the facts of that case, thus requiring a reversal of that trial court's judgment. *See also, Fuentes v. State*, 673 S.W.2d 207 (Tex.App.—Beaumont 1984, pet. ref'd); *Smith v. State*, 667 S.W.2d 836 (Tex.App.— Dallas 1984, pet. ref'd). Appellant's objection to the testimony of Dr. Nelson should have been sustained. Appellant's first ground of error is sustained.

In his second ground of error, appellant contends that "[t]he trial court erred in permitting the exclusion of the public during the testimony of the State's witness Michael Palmer and in allowing the Guardian Ad Litem representing Michael Palmer to remain in the courtroom and in such a position as to affect the jury's consideration of his testimony."

The record shows that the State called Michael Palmer, a child approximately eleven years old, to testify about specific sexual acts involving himself, appellant and several other members of his family. Prior to his testimony, the State moved to exclude from the courtroom members of the general public during the examination of Michael in order to protect the witness from harassment or undue embarrassment. The trial court granted the State's motion over appellant's objection that he was entitled to a "public trial."

Appellant contends, without authority, that, by excluding the general public from the courtroom, he was denied his right to an open and public trial as guaranteed by article 1.24 of the Texas Code of Criminal Procedure. We disagree.

The right to a public trial afforded an accused is not absolute: limitations on public attendance may be imposed so long as they are no more exclusive than necessary to protect a state interest that outweighs the appellant's interest in public scrutiny of the proceedings. *Rovinsky v. McKaskle*, 722 F.2d 197 (5th Cir.1984) (Jolly, J., dissenting) (Reh'g denied). The protection of witnesses from embarrassment or intimidation so extreme that it would traumatize them or render them unable to testify is a state interest sufficiently weighty to justify partial or complete exclusion of the public. *Id.* at 200.

■ We hold that the action of the court was not in violation of the appellant's right to a public trial. It was proper, under the circumstances, to exclude from the courtroom those individuals who were not participants in the proceeding because of the extremely sensitive nature of the evidence being developed and the youthful age of the witness. *See* TEX.R.EVID. 610(a)(3).

■ Next, appellant's counsel objected at trial to the position of the guardian ad litem, Ms. Jack, in the courtroom during the child's testimony. He claimed that her position in the courtroom would lend credibility to the testimony of the witness to the prejudice of appellant. We disagree. The record shows that Ms. Jack was seated slightly behind the witness chair (approximately 15–20 feet). The jury was told by the trial court, prior to Michael's testimony, that Ms. Jack "is an attorney and officer of

the court; that she will not be participating in the actual trial, but she will be present as she is legally designated as Guardian Ad Litem of the child for the purposes of litigation." Appellant has failed to show that the guardian's physical location in the courtroom affected the jury's assessment of the witness' credibility.

■ Appellant's final complaint under his second ground of error, that the trial court abused its discretion by allowing the jury to observe the "cuddling and handling" of the witness by the prosecutor and Ms. Jack, is also without merit. The record shows that, during direct examination of Michael, the State requested that the attorneys approach the bench for a brief hearing. Thereafter, the jury was excused for a recess. Appellant then complained that, at some point during the bench conference, Michael left the witness stand and sat in Ms. Jack's lap, which the jury was allowed to observe. However, it was *after* the jury was removed from the courtroom that appellant contended that the prosecutor and Ms. Jack "hugged him" and "kissed him." Appellant has failed to show that he was in any way harmed. Appellant's second ground of error is overruled.

■ In his third ground of error, appellant contends the trial court erred in overruling his objection to the prosecutor's final argument where the prosecutor asked for "a finding of guilty because if you find this appellant not guilty, he'll go down and walk out this door and he may meet other little children. You may have grandchildren...." Objection was made before the statement "other little children" and at the end of the statement that the argument was not material and argued matters not in

evidence. In view of our disposition of the first ground of error and the fact that the jury argument must always be judged in connection with the surrounding circumstances, it is unnecessary to consider appellant's complaint in this area. Nevertheless, we caution counsel for the State to keep its remarks in summation within the framework announced in *Alejandro v. State,* 493 S.W.2d 230 (Tex.Crim.App.1973) or risk the often unnecessary and always unpopular and costly necessity of reversal and retrial.

The judgment of the trial court is REVERSED and the cause is REMANDED.

NYE, Chief Justice, dissenting.

I respectfully dissent from the majority's decision to reverse the conviction of the sexual abuse of a child. Their interpretation and application of the mental health privilege provided by Rule 510(b)(1) of our Texas Rules of Evidence [1] is incorrect. In addition, the admission of the same evidence without objection throughout the trial cured the error, if any there was.

Article 5561h and Rule 510(b)(1) are the operative statutory provisions relevant to this case. However, I fail to see how a determination of this issue disposes of appellant's claim that the admission of his communications to Dr. Nelson violated this patient/psychologist privilege. The privilege was not available to this defendant under the facts of this particular case. The majority's holding makes two fallacious assumptions: (1) that the conversations between appellant and Dr. Nelson were in the nature of diagnosis, evaluation or treatment; and (2) that, if the testimony was not admissible (because it was privileged), it was reversible error.

1. Article 5561h § 2(a) mandates that:
   "Communication between a patient/client and a professional is confidential and shall not be disclosed except as provided in section 4 of this Act."
   On November 23, 1982, the Supreme Court of Texas entered an order adopting and promulgating the Texas Rules of Evidence, to become effective on September 1, 1983, under which article 5561h is deemed repealed, insofar as it relates to civil actions, and replaced by Rule

510, which also provides for "Confidentiality of Mental Health Information." TEX.R.EVID. 510. Rule 510(b)(1) provides that: "Communication between a patient/client and a professional is confidential and shall not be disclosed."
We note the drafter's comment to Rule 510 states that it *only governs these disclosures in judicial or administrative proceedings and whether a professional may or must disclose such communications in other circumstances is governed by article 5561h.* (Emphasis added.)

The stated purpose of this privilege between a "patient/client and a professional" is to facilitate effective mental health treatment. *See Gaynier v. Johnson*, 673 S.W.2d 899 (Tex.App.—Dallas 1984, no writ). Likewise, the purpose of its predecessor statute (article 5561h) was to protect *mentally incompetent persons* from the abuse of psychiatric examination and the use of the information thus gathered for any purpose other than civil commitment. *A.D.P. v. State*, 646 S.W.2d 568 (Tex.App. —Houston [1st Dist.] 1982, no writ). Under the facts of this case, the appellant does not qualify as a "patient/client" as envisioned by Rule 510(a)(2). The definition under Rule 510a(2) states:

> (2) Patient means any person who (A) consults, or is interviewed by, a professional for purposes of *diagnosis, evaluation, or treatment* of any mental or emotional condition or disorder, including alcoholism and drug addiction; or (B) is being treated voluntarily or being examined for admission to voluntary treatment for drug abuse.

There was no evidence that the appellant saw Dr. Nelson for "diagnosis, evaluation or treatment" as the rule requires for the confidentiality to be privileged. It is the proof of the existence of the relationship, rather than the specific context of the statement made, that determines the nature of the communication and privilege. See: *Gaynier v. Johnson*, 673 S.W.2d at 903. As such, I would hold that the communications between appellant and Dr. Nelson during the family counseling interview were not within the privilege of confidentiality afforded by Rule 510.

The record shows that appellant and his wife were referred to a family counseling service provided by Dr. Nelson as part of an on-going investigation by the Texas Department of Human Resources (TDHR) involving two prior complaints of sexual abuse of two of the children living with appellant and his wife. Dr. Nelson testified that, on March 25, 1983, appellant and his wife voluntarily attended their appointment with her to talk about family problems, primarily the allegations of sexual abuse of appellant's stepdaughter, who had been removed from their home at that time. She explained that appellant and his wife were scheduled to come in to her office for counseling two or three times before, but these appointments were either cancelled or they did not show up. Further, Gloria Ramirez, another employee of TDHR, testified that she had been assigned a case involving M. P. (the victim) and the appellant. She stated that, on March 11, 1983, when she discussed counseling with appellant, he responded that "counseling was a waste of time." Ramirez testified that, again, on March 14, 1983, she discussed a counseling appointment with appellant, and he stated that "he wasn't going" because it was a waste of time.

The majority's opinion assumes that appellant was *seeking* professional services for purposes of "diagnosis, evaluation or treatment of any mental or emotional condition or disorder." The record does not support the majority's position. *Cf. Tumlinson v. State*, 663 S.W.2d 539 (Tex.App. —Dallas 1983, pet. ref'd.). In *Tumlinson*, the defendant went to the emergency room of the hospital complaining that he was "nervous, anxious and had been contemplating suicide." In this case, the testimony of the "professional," Dr. Nelson, does not show that the primary reason appellant and his wife went to her family service center was for consultation or treatment of an emotional or mental condition.

Contrary to the underlying position of the majority opinion, the record simply does not reveal that, at any point throughout the TDHR investigation, appellant or his wife were seeking professional help for some psychological or emotional problem. Appellant's visit with Dr. Nelson was for family counseling, not treatment of a mental disorder as a patient. Appellant testified that he told Dr. Nelson that he "would go along with M.P.'s story" because he was fearful that he would never see M.P. again. Appellant stated that he was told by Dr. Nelson that he was "going to have to cooperate" if he wanted M.P. to come back home. Appellant clearly was not pressured

to attend the family sessions with Dr. Nelson; he was not under arrest; he was not subject to a court order to see the therapist; and he was not seeking treatment, evaluation or diagnosis of his health. His testimony of his "fears" of losing his stepdaughter does not serve to elevate the relationship with Dr. Nelson to that of one of "patient/client-professional."

Article 38.10 of the Texas Code of Criminal Procedure defines competent witnesses. Nowhere in this article does it exempt the testimony of Dr. Nelson. The appellant claims the privilege under the Texas Rules of Civil Evidence, and, as such, the burden is upon him to prove the privilege. This he did not do. It is well established that the burden of establishing a given fact is on the party who asserts it. *See, e.g., City of Houston v. Jones,* 679 S.W.2d 557, 559 (Tex.App.—Houston [14th Dist.] 1984, no writ) (one seeking benefit of a statutory exception has burden); *Christoph v. Sims,* 234 S.W.2d 901, 904 (Tex.Civ.App.—Dallas 1950, writ ref'd n.r.e.) (one claiming lack of capacity to marry must prove it); *Munzesheimer v. Leopold,* 163 S.W.2d 663, 665 (Tex.Civ.App.—Galveston 1942, writ ref'd w.o.m.) (infirmities in abstract of judgment must be shown by one seeking to remove cloud on title based on filing of abstract). In the same manner, the burden of establishing a testimonial privilege is on the one asserting it. *Cunningham v. State,* 488 S.W.2d 117, 121 (Tex.Crim.App.1972); *McGrede v. Rembert National Bank,* 147 S.W.2d 580, 584 (Tex.Civ.App.—Texarkana 1941, writ dism'd judgmt cor.). While none of these authorities deal directly with Rule 510, this reasoning is additionally supported by Rules 512 and 513, which speak extensively of a *claim* of privilege by a party, which claims may impliedly be "defeated." *See* TEX.R.EVID. 512, 513.

I would hold that appellant does not fall within the category of a "patient/client" under Rule 510(a)(2). It is obvious that the appellant never did envision that his visit with Dr. Nelson was that of the category of patient as the rule requires. As such, the communications between appellant and Dr. Nelson during that interview were not within the privilege of confidentiality afforded by Rule 510 of the Rules of Evidence.

This case must be affirmed for another reason. The majority opinion also fails to recognize that the testimony of Dr. Nelson was cumulative of the testimony of other witnesses whose testimony was not objected to by appellant. The fifteen-year-old victim, M.P., testified *without objection* that, on March 8, 1983, she was forced to have sex with her mother and father (the appellant). She explained in graphic detail how the appellant had placed his mouth in contact with her genitals. She testified that this type of conduct by appellant happened "so many times ...," and that, when this happened, her mother, her brother, the appellant, and herself were all present.

Next, the State called the victim's brother, a ten-year-old boy, to the stand. He testified *without objection,* that he had seen the appellant and his sister, M.P., sitting naked together on the bed in his mother's bedroom. He demonstrated, *without objection,* specific sexual acts involving the appellant, M.P. and his mother, with the use of anatomical dolls.[2] He also demonstrated before the jury and *without objection* that appellant had touched him in his "penis area" when he was naked.

Additionally, Elda Villarreal, a "non-professional" (as defined by Rule 510a(1)), testified that, on May 25, 1983, she had gone to talk to appellant and his wife for two purposes: 1) to investigate a referral of child abuse concerning the ten-year-old boy

---

**2.** During a recess, the trial court gave the following interpretation of this demonstration made by the witness:

"in response to the State's questions, the witness placed the doll representing the Defendant on the doll's back then placed the back [sic] representing [M.P.] with her legs spread

and sitting on the face of the doll representing the Defendant. The doll representing the mother of the witness was placed astride the doll representing Mr. Mosby, the Defendant, straddled his body facing him and also with her front to the back of the doll representing [M.P.]

and 2) to provide on-going services involving the sexual abuse of M.P. When asked by the State if the appellant said anything to her on that date, appellant objected that any such communication between appellant and Villarreal was privileged under article 5561h. The trial court correctly overruled the objections, and Villarreal testified that, in reference to his sexual abuse of M.P., appellant told her "he did not know how it had all begun." On cross-examination, counsel for appellant asked Villarreal if she had any doubt that when "Mr. Mosby [the appellant] said, 'I do not know how it all got started,' that he was referring to the 'sexual abuse of M.P.'" Villarreal reasserted that she had no doubts that appellant was referring specifically to sexual abuse of M.P. because "I was there engaging in the conversation with him."

Any error in the admission of Dr. Nelson's testimony did not constitute reversible error because the same evidence, in fact, considerably more, was admitted throughout the trial without objection. *Boles v. State*, 598 S.W.2d 274, 279–80 (Tex.Crim.App.1980); *Silguero v. State*, 654 S.W.2d 492, 494 (Tex.App.—Corpus Christi 1983, pet. ref'd); *Rathmell v. State*, 653 S.W.2d 498, 501 (Tex.App.—Corpus Christi 1983, pet. ref'd). Appellant has clearly failed to show that he was harmed or prejudiced to such an extent that would require a reversal of the jury's verdict. There was other competent and believable evidence which supports the jury's conviction of appellant.

Appellant's ground of error should be overruled, and the judgment of the trial court should be affirmed.

## OPINION ON MOTION FOR REHEARING

SEERDEN, Justice.

■ The State filed a motion for leave to file a late motion for rehearing. Pursuant to Rules 4 and 6, TEX.R.CRIM.APP.P., we granted the State's motion to file a motion

for rehearing. *Cf. Marroquin v. State*, 652 S.W.2d 429, 434 (Tex.App.—Corpus Christi 1983, no pet.).

In its motion for rehearing, the State argues that an amendment to TEX.REV. CIV.STAT.ANN. art. 5561h is relevant to this case and provides a pertinent exception to the psychiatrist/patient privilege. The State urges, therefore, the communications between appellant and Dr. Nelson were not privileged and the conviction should be affirmed. We agree.

Prior to August 27, 1979, there was no psychiatrist/patient privilege recognized by Texas law. *See Ex Parte Wilson*, 606 S.W.2d 902, 904 (Tex.Crim.App.1980). In 1979, the Texas Legislature created a statutory privilege for such communications. Act of Aug. 27, 1979, ch. 239, 1979 TEX. GEN.LAWS 512. The 1979 version of Article 5561h provided exceptions to this privilege in Section 4, none of which are relevant to the instant case. Then, effective September 1, 1983, Section 4(a) was amended to provide the following exception: "Sec. 4(a) Exceptions to the privilege in court proceedings exist: ... (5) in any criminal prosecution where the patient is a victim, witness, or defendant...." Act of Sept. 1, 1983, ch. 511, § 2, 1983 TEX.GEN. LAWS 2970, 2973. The conversations between appellant and Dr. Nelson occurred between March and May, 1983. This case went to trial on April 16, 1984 and these communications were admitted into evidence on April 17, 1984. Thus the communications were privileged when made, but not when admitted into evidence at trial.

Appellant argued in his original brief that Section 4(a)(5) was inapplicable in this case because it was not in effect when the communications were made. He argued that the statute requires the confidentiality to be preserved for all purposes after the communications were made. (Section 2(d)). The State did not address this point in its original brief. Our Court also overlooked this point in our initial consideration of this case.

The privileged communications at issue in this case clearly come within the Section 4(a)(5) exception. The question is whether that provision is operative in this case.

In absence of an express intent to the contrary, a procedural statute is operative from its effective date. *Wilson v. State,* 473 S.W.2d 532, 535 (Tex.Crim.App.1971); *Neal v. State,* 400 S.W.2d 550, 551 (Tex. Crim.App.1966). A rule relating to the admission of evidence is procedural. *See Wilson,* 473 S.W.2d at 535. Specifically, the Texas Supreme Court has stated that the privilege created by Article 5561h "relates to the admissibility of evidence and is procedural in nature." *Ex Parte Abell,* 613 S.W.2d 255, 262 (Tex.1981).

The following cases are instances where the legislature changed a rule of evidence after a cause of action had arisen but before the trial of the case and the procedural change was held applicable as of its effective date: *Harper v. State,* 686 S.W.2d 738 (Tex.App.—Austin 1985, no pet.); *Wilson v. State,* 473 S.W.2d 532; *Ritchey v. State,* 407 S.W.2d 506 (Tex.Crim.App.1966); *see also Exxon Corporation v. Brecheen,* 526 S.W.2d 519, 525 (Tex.1975).

Based on this analogous authority, we hold that Article 5561h is a procedural rule because it relates to the admissibility of evidence, and it was applicable to pending litigation as of its effective date. Section 4(a)(5), therefore, did provide an exception to the privilege at the time of trial. The trial court did not err in admitting Dr. Nelson's testimony regarding her conversations with appellant.

The judgment of the trial court is AFFIRMED.

NYE, C.J., concurs.

NYE, Chief Justice, concurring.

I agree with the law as set forth in the majority's opinion on rehearing; however, I am still convinced that the reasoning and analysis set forth in my previous dissenting opinion is decisive.