Ex parte Winford A. WEEKS, Appellant,

v.

The STATE of Texas, Appellee.

No. 43392.

Court of Criminal Appeals of Texas.

April 16, 1975.

Rehearing Denied May 7, 1975.

W. C. Wiebusch, Houston (On appeal only), for appellant.

Carol S. Vance, Dist. Atty., Clyde F. DeWitt, III, Joe Moss and James C. Brough, Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for aggravated assault on a police officer. Punishment was assessed by the jury at two (2) years in the county jail.

In his first two grounds of error appellant asserts he was denied his right to counsel on appeal, contending that his counsel was not appointed until over three (3) years after a hearing on indigency, and that he has been deprived of a transcription of the court reporter's notes for the purpose of appeal.

The appellant, whose cases have been before this court on other occasions,[1] was charged by information with having committed an aggravated assault on a police officer on or about August 14, 1966. On November 17, 1966, the appellant, repre-

[1]. See Weeks v. State, 417 S.W.2d 716 (Tex.Cr.App.1967), and Weeks v. State, 476 S.W.2d 310 (Tex.Cr.App.1972).

sented by retained counsel (Ralph Chambers), was found guilty and punishment was assessed at one (1) year in the county jail. A new trial was granted on December 7, 1966. On August 22, 1967, the appellant, who was represented by retained counsel (Clyde Woody and Marian Rosen), was tried again and the jury assessed his punishment at two (2) years in the county jail. On this same date a motion for new trial was filed and a hearing set on such motion for September 11, 1967. Such action was taken in appellant's presence. Appellant made a $2,500 bond. An amended motion for new trial was filed on August 30, 1967. On September 11, 1967, the amended motion for new trial was overruled in the presence of appellant's retained counsel. Appellant was not present, and the court issued an alias capias for his arrest. It does not appear that bond forfeiture proceedings were instituted. Appellant was arrested on October 3, 1969, in Brownsville. On October 13, 1969, appellant was sentenced for the first time with retained counsel, John P. Farra, an associate of Woody and Rosen, being present. Notice of appeal was given on the same date. Notice of completion of the record was given to Mr. Farra and the district attorney. The record was approved on January 29, 1970. Notice of the approval was also given and Mr. Farra responded that the firm of Woody and Rosen no longer represented the appellant.[2] On January 30, 1970, the appellant filed a request for the appointment of counsel on appeal.

On February 17, 1970, for the first time, appellant filed a motion and pauper's oath requesting a statement of facts and appointment of counsel. In such instrument reference was made to a letter dated January 5, 1970, addressed to the court in which appellant claims he asserted he was indigent. On February 17, 1970, a hearing was held on the claim of indigency, at which time the appellant was represented by attorney Will Gray, who it appears volunteered to represent the appellant at such hearing. The appellant was the sole witness and testified to his indigency. At the conclusion of the hearing the court denied the request for a free transcript and the appointment of counsel on appeal.[3]

On November 10, 1970, this court in an opinion abated the appeal upon the motion of the State to abate. See Weeks v. State, 459 S.W.2d 639 (Tex.Cr.App.1970). The trial court was instructed to determine if the appellant was indigent and entitled to a record on appeal and the effective assistance of counsel, or determine whether counsel who represented him at trial should be allowed to withdraw or whether appellant was attempting to use his right to counsel to delay the orderly administration of justice. The mandate of this court issued on November 30, 1970.

It does not appear that any further action was taken in the case until January 24, 1974, when the appellant appeared in person, without counsel, and the court questioned the appellant about his indigency, his representation by retained counsel in other cases, etc. At the conclusion of the hearing the court found the appellant indigent and that counsel needed to be appointed. On February 5, 1974, his appointed counsel on appeal filed a "motion for further proceedings on indigency," noting the court had failed to find whether the appellant was entitled to a free transcript or to find that he attempted to use the right to counsel to delay the orderly administration of justice, and that a formal order appointing counsel on appeal had not been filed.

On February 7, 1974, another hearing was conducted. The court reporter, who had taken the second trial in August, 1967, testified that it was his custom to keep his

---

2. Farra's letter indicated he had appeared at the time of sentencing only at the request of the court and gave notice of appeal at appellant's request.

3. The court made a docket entry that it had been advised by Joe Moss, Assistant District Attorney, that the appointment of counsel on appeal in misdemeanor cases was not required by law.

untranscribed court reporter's notes for a period of two years, and then they were placed in the trash as a matter of convenience because of a shortage of storage space; that he kept the notes in appellant's second trial until August, 1969, and then disposed of them. The appellant testified as to his indigency, his efforts to get some action taken on his appeal, that he did not know he was supposed to appear for the hearing on motion for new trial, etc. At the conclusion of this hearing the court formally appointed the counsel who represented appellant at the hearing as appellate counsel, allowed all other lawyers to withdraw, made a finding that the court reporter's notes were not available for transcription, that from September 11, 1967, to October 3, 1969, the appellant of his own volition was a fugitive from justice and was not an indigent during the period when the court reporter's notes were available and when a transcription thereof could have been obtained. All other records that were available were ordered to be prepared for the purpose of appeal.

On June 26, 1974, another hearing was held apparently on the objections to the approval of the record. Marian Rosen, one of appellant's attorneys at his August, 1967 trial, testified she would be unable to assist in preparing a narrative statement of facts, that her own handwritten notes were not copious enough for that purpose.

Despite the numerous hearings, the record before us is not as well developed as it might have been.

 Curry v. State, 488 S.W.2d 100 (Tex.Cr.App.1972), made clear that an indigent convicted of a misdemeanor is entitled to counsel on his first appeal and that such constitutional right to counsel is to be applied retroactively. *Curry* also discussed the right of an indigent convicted of a misdemeanor to have a free record on appeal both from a federal constitutional standpoint and Texas statutory provisions. It was there noted that an indigent person convicted of a misdemeanor must be sup-

plied by the State with a "record of sufficient conpleteness" to permit proper consideration of his claims on appeal as a federal constitutional right, although the State need not necessarily furnish a complete verbatim transcript, but may provide alternatives that accord effective appellate review. However, if the grounds of appeal or error make out a colorable need for a complete transcript, the State has the burden of showing that a portion of the record or an alternative will suffice for an effective appeal on the grounds of error involved. See Mayer v. City of Chicago, 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372 (1971). *Curry* also held that the decision in *Mayer* was to be applied retroactively, and noted that Article 40.09, Vernon's Ann.C.C.P., applied to all cases and that Section 5 thereof provided for a free transcription of the court reporter's notes if the court finds the convicted defendant is indigent. *Curry* observed that the State statutory provisions were thus broader than federal constitutional requirements.

 It then follows that an indigent convicted of a misdemeanor would be entitled to a new trial if he made known to the court at the time of conviction he desired to appeal, that he was indigent, had no attorney on appeal, and it is now impossible to produce a transcription of the court reporter's notes for an out-of-time appeal. Ex parte Moreland, 456 S.W.2d 949 (Tex. Cr.App.1970); Ex parte Pugh, 465 S.W.2d 946 (Tex.Cr.App.1971).

We must determine if appellant's actions call for a different result in the instant case. At the time judgment was entered on August 22, 1967, a motion for new trial was filed and a hearing thereon was set for September 11, 1967, in appellant's presence. At the time appellant was represented by retained counsel and he was released on a $2,500 bond. He did not appear at the hearing on the motion for new trial and an alias capias was issued. He remained at large for over two (2) years until his arrest on October 3, 1969, in Brownsville, outside the jurisdiction of the

court. The court found that from September 11, 1967, until the arrest appellant was a fugitive from justice and was not indigent during that same period. At the time of sentencing and the giving of the notice of appeal on October 13, 1969, appellant did not make known to the court his indigency. It was not until eighty-two (82) days later, according to appellant's testimony, that he wrote on January 5, 1970, a letter to the court indicating his indigency. It was one hundred seven (107) days later (January 30, 1970) that he first signed a sworn request for appointed counsel, and not until February 17, 1970, did he file a pauper's oath for a free transcript.

■ All of these belatedly filed instruments were futile with regard to the court's ability to order a transcription of the court reporter's notes since they had been thrown away two years after the trial while appellant was a fugitive from justice and not indigent. Although it is good practice to always preserve such notes, the court reporter's action was within the confines of the law. Article 2324, Vernon's Ann.Civ.St., only requires that a court reporter preserve all shorthand notes for future reference "for a full year."

In Foley v. State, 514 S.W.2d 449 (Tex. Cr.App.1974), the defendant failed to apprise the court of his whereabouts so that the court could inquire into his possible indigency. The court there held that the failure of the defendant to maintain himself within the jurisdiction of the court in order to answer the court's request of appearance was tantamount to a waiver of his right to submit further evidence as to indigency.

■ It is, of course, well established that it is incumbent upon a defendant to exercise due diligence to procure a transcription of the court reporter's notes by filing a pauper's oath. Hilliard v. State, 401 S.W.2d 814 (Tex.Cr.App.1966), cert. denied, 385 U.S. 941, 87 S.Ct. 310, 17 L.Ed. 2d 220; Ex parte Thorbus, 455 S.W.2d 756

(Tex.Cr.App.1970); Rhoda v. State, 514 S.W.2d 937 (Tex.Cr.App.1974).

■ We conclude that appellant's action in becoming a fugitive from justice for two years when he had retained counsel and was not an indigent bears the responsibility for the unavailability of the transcription of the court reporter's notes. He is in no position to now complain. The State is not at fault. See and compare Norvell v. Illinois, 373 U.S. 420, 83 S.Ct. 1366, 10 L.Ed.2d 456 (1963).

The delay in appointment of counsel on appeal could not have resulted in the production of the court reporter's notes, for they had been thrown away long prior to the first request for the appointment of counsel.

Appellant's first and second grounds of error are overruled.

■ In his third ground of error appellant sets forth several different contentions. The ground of error appears to be multifarious and not in compliance with Article 40.09, Sec. 9, Vernon's Ann.C.C.P. See Jackson v. State, 516 S.W.2d 167 (Tex.Cr.App.1974). Nothing is presented for review. We note that appellant complains of the conditions in Harris County under which an appellate record must be examined for preparation of briefs on appeal, etc.; that the court approved the entire record, which was designated a "Supplemental Record," and that the index and docket sheet in the record are inadequate. In light of what has been said earlier, we are not impressed with the clerical designation of a "Supplemental Record," and it is obvious, with regard to claimed errors in the preparation of the appellate record, that Article 44.23, Vernon's Ann.C.C.P., providing that technical error in the preparation and filing of the record on appeal shall not determine the affirmance or reversal of a case on appeal.

Next, appellant complains that he was prosecuted on "an insufficient and void in-

formation" since it was signed by an "Assistant District Attorney" and the statutes provide for the election of a "Criminal District Attorney" for Harris County. Appellant contends that in 1953 the enactment of Article 326k–26, V.A.C.S., abolished the office of Criminal District Attorney of Harris County and created the office of District Attorney, but that the 1963 and 1967 amendments to Article 322, V.A.C.S., both provided for the election of a Criminal District Attorney of Harris County and that there no longer exists any statutory authority for the office of District Attorney of Harris County.

First, it is observed that the ° second amendment in 1967 of Article 322, supra, upon which appellant relies did not become effective until August 28, 1967 (Acts 1967, 60th Leg., p. 1203, ch. 538, Sec. 3), and would not affect the information in the case at bar, which was presented on August 16, 1966.

■ The first amendment to Article 322, supra (Acts 1963, 58th Leg., p. 1312, ch. 501, Sec. 12), here in question involved Senate Bill 449, clarifying the status of the office of the Criminal District Attorney of Bexar County. In Section 12 of said Senate Bill 449 it sought to amend Article 322, supra, and did provide in part: "There shall also be elected a Criminal District Attorney for Harris County, a Criminal District Attorney for Dallas County, a Criminal District Attorney for Tarrant County . . . ." The design of Section 12 of the Bill as noted in the caption was to repeal specific provisions in Article 322, supra, that were in conflict with the provisions of Senate Bill 449. An examination of Article 322 as it existed prior to the 1963 amendment and the provisions of Senate Bill 449 relating to the Criminal District Attorney of Bexar County reveals that there was no conflict regarding the Harris County District Attorney. If, as appellant suggests, it was the legislative intent by virtue of said Senate Bill 449 (concerning Bexar County's Criminal District Attorney) to transform the Harris County

District Attorney back into the office of Criminal District Attorney, that portion of the statute relating to Harris County District Attorney would be unconstitutional because of the caption and the multifarious intent. Article III, Sec. 35, Texas Constitution Vernon's Ann.St.; Harvey v. State, 515 S.W.2d 108 (Tex.Cr.App.1974). The caption gave no hint that this was the purpose of the Bill. Appellant's contention is without merit.

■ Appellant also complains that he received a unitary trial in contravention of Article 37.07, Vernon's Ann.C.C.P. A review of the record and appellant's objections to the court's charge reveals no objection was made by appellant to the unitary trial. Thus, no error is reflected. See and cf. Dickson v. State, 492 S.W.2d 267 (Tex.Cr.App.1973); Breeden v. State, 438 S.W.2d 105 (Tex.Cr.App.1969), and cases there cited. Further, appellant's second trial took place prior to the effective date of the 1967 amendment to Article 37.-07, supra. There further appears to be no error, in absence of written objections to the court's charge, or a showing of injury. Bridges v. State, 422 S.W.2d 449 (Tex.Cr.App.1967); Seefurth v. State, 422 S.W.2d 931 (Tex.Cr.App.1967).

Lastly, appellant appears to assert he was injured by the fact that at his first trial his punishment was assessed at one (1) year in the county jail and was assessed at two (2) years in the second trial. Apparently appellant relies upon North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656, 659 (1969), holding that increased punishment on retrial is constitutionally prohibited unless the reasons therefor are made a part of the record. The decision sought to prevent increased penalties from being the product of the sentencing judge's retaliatory motives and vindictiveness resulting from the accused's successful effort in securing a new trial.

■ Chaffin v. Stynchcombe, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973), held that the rendition of a higher punish-

ment by a jury upon retrial does not violate the double jeopardy clause and does not offend due process so long as the jury is not informed of the prior sentence and the second punishment is not otherwise shown to be a product of vindictiveness. Both before and after Chaffin v. Stynchcombe, supra, this court has reached the same result. See, i. e., Branch v. State, 445 S.W.2d 756 (Tex.Cr.App.1969); Gibson v. State, 448 S.W.2d 481 (Tex.Cr.App. 1970); Casias v. State, 452 S.W.2d 483 (Tex.Cr.App.1970); Fuery v. State, 464 S.W.2d 666 (Tex.Cr.App.1971); Fairris v. State, 515 S.W.2d 921 (Tex.Cr.App.1974).

The judgment is affirmed.