**Lafayette Russell WYNNE, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 07–89–0221–CR.**

Court of Appeals of Texas, Amarillo.

May 27, 1992.

Rehearing Denied June 24, 1992.

---

Shelton & Jones, Travis D. Shelton and Dale Jones, Lubbock, for appellant.

Danny E. Hill, Dist. Atty., Danny E. Hill, Wesley G. Clayton, and Bruce Sadler, Amarillo, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

REYNOLDS, Chief Justice.

Found guilty of the offense of murder and punished by confinement for 55 years, appellant Lafayette Russell Wynne seeks a reversal and remand by both a motion and five points of error. The motion is based on the failure to provide a complete statement of facts, and the points are appellant's contentions that the trial court erred in denying his motion to change venue, in allowing his cross-examination on certain matters, and in its factual findings and legal conclusions concerning the unavailability of the statement of facts of the venue hearing. On the rationale expressed, we will overrule appellant's motion and points, and affirm.

This appeal is from the second conviction of appellant for the murder of Erle Winston Mathis, who died when appellant shot him. Appellant's first conviction in Potter County in early 1983, for which he was assessed punishment at confinement for 50 years and a fine of $10,000, was reversed and the cause was remanded for a new trial. *Wynne v. State*, 676 S.W.2d 650 (Tex.App.—Fort Worth 1984, pet'n ref'd). The opinion in that appeal adequately sets forth the circumstances surrounding the homicide, and they will not be repeated here, except as may be necessary in resolving the appellate contentions.

Upon remand, appellant, represented by retained counsel, moved for a change of venue which, following a two-day hearing on July 29–30, 1985, was overruled. Trial commenced in Potter County on September 5, 1985 and resulted in a verdict of guilty returned by the jury on September 12. Court was recessed until the morning of September 13 for the punishment phase of the trial. Appellant, who was at liberty on bail, did not appear when court reconvened.

After a hearing, the court determined that appellant's absence was willful and voluntary, and proceeded with the punishment phase of the trial. Hearing relevant evidence, the jury assessed appellant's punishment at 55 years confinement.

The venue hearing and the trial proceedings were reported by Paul Bascus, the official court reporter for the court. Bascus left the court reporter's office on December 31, 1986.

On March 22, 1989, appellant was apprehended in California and returned to Potter County. Seven days later on March 29, Judge David L. Gleason, who succeeded the trial judge on January 1, 1987, pronounced judgment and sentence. Appellant filed a motion for a new trial, which was denied.

Appellant perfected his appeal, and requested the statement of facts from Bascus. After we granted several extensions of time for Bascus to file the statement of facts, and implemented procedures to compel the filing, he delivered a statement of facts that was incomplete because it did not include a transcription of the venue hearing, together with an affidavit, which stated:

I, Paul Bascus, was the Official Court Reporter for the 47th District Court at the time a Change of Venue hearing was had in Cause No. 21,507–A, styled "State of Texas vs. LaFayette Russell Wynne" in June, 1985, and I took stenographic notes of the proceedings.

Said notes were kept in my possession for more than three years. I received notification in April, 1989 from Mr. Wynne's attorney of record that a transcription of said notes were needed. At that time, I was unable to locate the notes and have been unable to up to the present time.

It is my belief the notes were lost or misplaced between October 4, 1988, when I moved from McLoud, Oklahoma to Amarillo, Texas and March 20, 1989, when I moved back to McLoud.

Appellant applied to this Court for an evidentiary hearing in the trial court to develop a supplemental record. Tex.R.App.P. 55(b). The State did not file a response. We granted appellant's motion, abated his appeal, and ordered the trial court: to conduct a hearing to determine the accuracy of the court reporter's certification of the lost or misplaced venue notes and the availability of exhibits; to make findings of fact and conclusions of law, allowing counsel to request different or additional factual findings; to cause a transcription of the hearing; and to cause a supplemental transcript containing the proceedings to be filed in this Court.

Pursuant to our order, the trial court conducted an evidentiary hearing on August 2, 1990. By its September 5 order, the trial court made findings of fact and conclusions of law as follows:

### FINDINGS OF FACT

(1) Following reversal of the first trial, this case was remanded to this Court for retrial.

(2) The Defendant was released on bail.

(3) On July 29, 1985, and July 30, 1985, a hearing was conducted before [the trial judge] on the Defendant's Motion for Change of Venue.

(4) At the venue hearing the defense presented twenty-three witnesses and, according to Honorable John Mann, co-counsel for defense, most if not all of the witnesses testified as to opinion only.

(5) On July 30, 1985, [the trial judge] denied said motion and set the case for trial September 5, 1985.

(6) On September 5, 1985, jury was selected, empaneled and sworn and Jury trial began before [the trial judge], which continued for several days.

(7) On September 12, 1985, following the jury's verdict of Guilty of Murder and an affirmative finding on the use of a deadly weapon, Court was recessed until the morning of September 13, 1985, for punishment phase of the trial.

(8) The Defendant failed to appear on September 13, 1985, for the punishment phase.

(9) After hearing, [the trial judge] determined that the Defendant's absence was wilful and voluntary and the punishment phase of the trial was conducted in Defendant's absence on September 13, 1985, resulting in punishment being assessed at fifty five (55) years confinement in the Texas Department of Corrections.

(10) The Defendant remained a fugitive from September 13, 1985, to March 22, 1989, a period of over three and one half (3½) years.

(11) On March 22, 1989, the Defendant was arrested by F.B.I. Agent Gayle Jacobs and other agents in Spring Valley, California.

(12) On March 29, 1989, the Defendant appeared in this Court with his counsel and was formally sentenced in this cause.

(13) On June 9, 1989, the Defendant's Motion for New Trial was denied.

(14) Both the hearing on change of venue conducted on July 29 and July 30, 1985, and the jury trial which began September 13, 1985, and concluded September 13, 1985, were recorded by Paul Bascus, who was the Official Court Reporter of this Court at that time.

(15) In the fall of 1986, this Court moved its physical location from the Potter County Courthouse to the new Potter County Courts Building.

(16) Mr. Bascus moved all his current stenographic notes on Potter County matters, including the Wynne notes, to the new quarters.

(17) Both [the trial judge] and Paul Bascus left office December 31, 1986.

(18) Mr. Bascus took some of his stenographic notes with him when he left office and left some notes in the Court Reporter's Office.

(19) Debby Bradford, Official Court Reporter for this Court beginning January 1, 1987, stored the remainder of Mr. Bascus' notes in the evidence room until Mr. Bascus personally took possession of them later in 1987.

\* \* \* \* \* \*

(21) Mr. Bascus retained possession of all his stenographic notes, contained in several boxes, throughout several moves.

(22) The only time the boxes of notes were not all in one location was during Mr. Bascus' move back to Amarillo from Oklahoma, in October, 1988, when, on several different occasions, he brought some boxes with him to Amarillo, and left the others stored in both his father's garage in Anadarko, Oklahoma and in a storage building on his mother's property in McLoud, Oklahoma.

\* \* \* \* \* \*

(24) Mr. Bascus was first requested to prepare a complete statement of facts by a letter from Honorable Travis Shelton dated June 22, 1989. This was more than three years and

nine months from the conclusion of the trial.

\* \* \* \* \* \*

(27) Notwithstanding the contents of affidavits filed by Mr. Bascus with regard to requests for extensions of time, the proof is evident that Mr. Bascus, having located his notes of the trial and having begun transcription thereof, thought that his notes to the change of venue hearing would surely be found.

(28) Not wanting to overlook any possible location for the missing notes, Mr. Bascus' search included sending persons back to the Potter County Courthouse to double check, and his search continued through May 8, 1990.

(29) All of the exhibits from the change of venue hearing and from the trial are currently filed with the District Clerk of Potter County. None are missing. There is no such exhibit as State's Exhibit No. 203.

(30) The only unavailable part of the record is the transcription of Mr. Bascus' stenographic notes concerning the change of venue hearing, which would cover the examination and cross-examination of witnesses as to opinion only. All exhibits from that hearing are in the District Clerk's possession.

### CONCLUSIONS OF LAW

(1) Texas Government Code, Section 52.-046(a)(4) requires the court reporter to preserve his notes for three years from the date on which they are taken.

(2) Mr. Bascus, having kept his notes from the venue hearing until at least October 4, 1988, a period of three years and two months, complied with the Government Code requirement.

(3) Defendant must exercise diligence in requesting a statement of facts.

(4) Rule 50(e) of the Rules of Appellate Procedure does not require reversal because of the loss of a portion of the record unless the loss occurs "without appellant's fault".

(5) Defendant is not "without fault" in the loss of the change of venue notes because of his voluntary absence from the jurisdiction of the Court for more than three and one half years, and because no request was made for a statement of facts while the Court Reporter's notes were still available.

Appellant timely filed his objections to the court's findings of fact and conclusions of law. After considering his objections, on September 25, 1990, the trial court made the following changes and refusals in the findings of fact:

(a) The Defendant has no objection to findings numbered 1, 2, 3, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 17, 18, 24, 28, and 29, and such findings remain unchanged.

(b) Defendant's objection to finding no. 4 is overruled. Any requested change is refused.

(c) Defendant's objection to finding no. 16 is overruled and his requested change is refused.

. . . . .

(d) Defendant's objection to finding no. 19 is overruled and the requested change is refused.

. . . . .

(e) Defendant's request to add certain words to finding no. 20 is granted. Finding no. 20 is therefore changed to read as follows:

(20) None of Mr. Bascus' stenographic notes of Potter County cases remain in the possession of the 47th District Court at the time of the August 2, 1990, hearing or after Mr. Bascus picked up notes from Ms. Bradford.

(f) Defendant's objections to findings no. 21 and no. 22 are overruled and the requested changes are refused....

(g) Defendant's request to change finding no. 23 is granted. Finding No. 23 is therefore changed to read as follows:

(23) On April 28, 1989, Mr. Bascus was contacted by Mr. Shelton regarding

transcribing objections to the Court's Charge. That request was followed by a letter of the same date requesting said transcription together with an estimate of costs for an entire transcript including the pre-trial hearings, such as the motion for change of venue....

(h) Defendant's objection to finding no. 25 is granted. Finding No. 25 is changed to read as follows:

(25) Following several extensions granted by the Court of Appeal (sic), Mr. Bascus finally prepared and filed a complete Statement of Facts of the trial of this case, together with his certificate dated May 8, 1990, and his affidavit of the same date in which he acknowledged that his notes of the Change of Venue hearing were lost or misplaced, and his belief that the loss occurred sometime between October 4, 1988, and March 20, 1989.

(i) The Defendant's objection to finding no. 26 is granted in part and refused in part. Finding No. 26 is changed to read as follows:

(26) While Mr. Bascus acknowledged that he kept no inventory of his notes and while he also acknowledged the possibility that the missing notes could have been lost at any time after they were taken, there is no evidence that they were in fact lost at any time other than when he believes they were lost (between October 4, 1988, and March 20, 1989), as stated in his affidavit dated May 8, 1990, (Defendant's exhibit 17, August 2, 1990.)

(j) Defendant's objection to Finding No. 27 is overruled. Any requested change is refused.

(k) Defendant's objection to Finding No. 30 is overruled. Any requested change is refused.

Citing supporting authority, the trial court overruled appellant's objections to the conclusions of law, and made an additional conclusion of law, as follows:

(1) Defendant's objection to conclusion no. 1 is overruled.

(2) Defendant's objection to conclusion no. 2 is overruled.

(3) Defendant's objection to conclusion no. 3 is overruled. (See *Ex Parte Breen*, 420 S.W.2d 932; *Castillo v. State*, 571 S.W.2d 6; *Aguirre v. State*, 680 S.W.2d 567.)

(4) Defendant's objection to conclusion no. 4 is overruled.

(5) Defendant's objection to conclusion no. 5 is overruled. (See *Weeks v. State*, 521 S.W.2d 858; *Delasantos v. State*, 673 S.W.2d 634; *Garces v. State*, 727 S.W.2d 48.)

(6) The Court makes the following additional conclusion of law No. 6:

Rule 11(d) of the Rules of Appellate Procedure is not applicable. First, it was not in effect until September, 1986; and second, even if it should ordinarily apply, the Defendant has not been sentenced, which is a prerequisite to its operation.

Thereafter, appellant filed his "Motion for Reversal of Conviction and for a New Trial Under Rule 50(e) for Failure to Provide a Complete Statement of Facts." The State filed a response. We withheld a ruling on appellant's motion until the rendition of a final decision on the appeal. We now address the motion.

■ Appellant bases his motion on the mandatory provisions of the Texas Rules of Appellate Procedure, to-wit: "If the appellant has made a timely request for a statement of facts, but the court reporter's notes and records have been lost or destroyed without appellant's fault, the appellant is entitled to a new trial unless the parties agree on a statement of facts." Tex.R.App.P. 50(e). He submits that when a portion of the statement of facts is omitted from the appellate record, a reversal of his conviction is mandated, without any allegation or showing of harm. *Dunn v. State*, 733 S.W.2d 212, 216 (Tex.Cr.App. 1987).

■ However, the principle attributed to *Dunn* is incompletely stated. A reversal results when through no fault of appellant or his counsel, he is deprived of a part of the statement of facts which he diligently requested. Appellant has the burden to establish that he has been deprived of the

statement of facts. To discharge the burden, he must show due diligence in requesting the statement of facts, and that his failure to file the omitted portion was not in any way due to his and his counsel's fault. *Id.* at 214–15.

In its finding of fact number 10, the trial court ascertained that appellant "remained a fugitive from September 13, 1985, to March 22, 1989, a period of over three and one half (3½) years." On this basis, the court determined in its fifth conclusion of law that appellant was not "without fault" in the loss of the change of venue notes because of his voluntary absence from the jurisdiction. In this regard, appellant questions how his absence "caused" the loss of the court reporter's notes.

In becoming a fugitive from justice, appellant bears the responsibility for the unavailability of the court reporter's notes. He is in no position to now complain about the incompleteness of the statement of facts. *Weeks v. State,* 521 S.W.2d 858, 862 (Tex.Cr.App.1975). By failing to appear for the punishment phase of his trial and remaining a fugitive for over three and one half years, appellant was not diligent in prosecuting his appeal, thereby producing the kind of delay that may be anticipated to cause lost items. Appellant filed his notice of appeal on June 23, 1989. This delay in filing for an appeal contributed to the loss of Bascus' notes. *Garces v. State,* 727 S.W.2d 48, 50 (Tex.App.—Houston [14th Dist.] 1987, pet'n ref'd).

■ In its second conclusion of law, the trial court resolved that "Mr. Bascus, having kept his notes from the venue hearing until at least October 4, 1988, a period of three years and two months, complied with the Government Code requirement." Effective September 1, 1985, section 52.-046(a)(4) requires an official court reporter to "preserve the notes for future reference for three years from the date on which they were taken." Tex. Gov't. Code Ann. § 52.046(a)(4) (Vernon 1988). Parenthetically, it is observed that when the venue hearing was conducted on the 29th and 30th days of July, 1985, Bascus was statutorily required to "preserve all shorthand notes taken in said court for future use or reference for a full year." Tex.Rev.Civ. Stat.Ann. art. 2324 (repealed 1985) (current version at Tex. Gov't. Code Ann. § 52.046) (Vernon 1988)). By application of that provision, then in effect to control the procedure, *Payne v. State,* 802 S.W.2d 686, 689 (Tex.Cr.App.1990), appellant is in no position to complain of the unavailable shorthand notes.

However, the time differences are of no moment. Appellant absented himself from the jurisdiction of the court for over three and one half years, which is greater than the period of time a court reporter was statutorily required, by either article 2324 or section 52.046, to keep his notes. As a result, appellant is chargeable with the time delay that caused the unavailability of the shorthand notes. *Garces v. State,* 727 S.W.2d at 50.

■ Nevertheless, appellant posits that section 52.046(a)(4) was never intended by the Legislature to apply to criminal cases. Although he concedes the appellate courts have applied section 52.046 in criminal cases, he argues "these old cases are now out of date." He suggests that in criminal cases it is not unusual for appellate activity to continue long after the expiration of three years from the date of the trial or pretrial hearing.

The distinction between civil and criminal appeals has been recently recognized, appellant contends, by the implementation of Rule 11(d) of the Texas Rules of Appellate Procedure, which was adopted by the Court of Criminal Appeals, and became effective September 1, 1986:

RULE 11. DUTIES OF COURT REPORTERS

\* \* \* \* \* \*

(d) When a defendant is convicted and sentenced to a term of more than two years and no appeal is taken, the court reporter shall file the nontranscribed notes of the proceeding with the district clerk within 20 days following the expiration of the time for perfecting appeal. The district clerk shall not be required to

retain the notes beyond 15 years from the date of their filing.

Appellant argues that Bascus was charged with knowledge of Rule 11(d) since he was the official court reporter until December 31, 1986.

Contending there is a conflict between a literal application of section 52.046 to criminal cases and the specific requirements of Rule 11(d), appellant argues there is a distinct need for preserving the court reporter's notes in a criminal felony trial beyond the ambit of section 52.046. Citing *McLennan v. State*, 796 S.W.2d 324, 327–28 (Tex. App.—San Antonio 1990, pet'n ref'd), appellant asserts his constitutional rights to equal protection and due process are adversely affected by the application of section 52.046. According to appellant, "it makes no sense to say that the district clerk has a responsibility to maintain the court reporter's notes for fifteen years when the defendant does not appeal, but that the court reporter can destroy the notes after three years if the defendant has not been sentenced."

Appellant cannot derive any comfort from the operation of rule 11(d), *supra.* Bascus was not required to file his notes with the district clerk under that rule since the time for perfecting the appeal had not expired when the trial court found Bascus' venue notes became unavailable.

Neither does the *McLennan* holding offer appellant relief. In that cause, defendant McLennan, pleading guilty, was granted deferred adjudication. Almost seven years later, he was adjudged guilty, he perfected an appeal, and he timely requested a statement of facts of the guilty plea hearing, but it was unavailable because the court reporter's notes had been destroyed. Although aware of section 52.046, *supra,* the court, noting that the defendant could not appeal until he was adjudged guilty, applied rule 50(e), *supra,* by holding that he had demonstrated due diligence in attempting to obtain the record, and that it was unavailable through no fault of his or his counsel's. 796 S.W.2d at 326–27. The same holding was reached on analogous facts in *Martinez v. State*, 802 S.W.2d 105 (Tex.App.—Amarillo 1990, no pet'n).

Unlike the diligent, faultless defendants in *McLennan* and *Martinez*, appellant, by his willful and voluntary absence from the jurisdiction of the court for more than three and one half years, demonstrated his lack of diligence in pursuing his appeal, thereby imparting validity to the trial court's conclusion that he was not without fault in the loss of the court reporter's notes. It follows that appellant has not sustained his burden to show a compliance with the requirements to obtain a reversal of his conviction because of an incomplete statement of facts. Therefore, his "Motion for Reversal of Conviction and for a New Trial Under Rule 50(e) for Failure to Provide a Complete Statement of Facts" is overruled.

Allied with the overruled motion are appellant's points of error four and five, by which he, incorporating the legal arguments presented in the motion, contends the trial court erred in its findings of fact and conclusions of law regarding the nature of the testimony given at, and the responsibility for the unavailability of the statement of facts of, the venue hearing. The error occurred, appellant submits, because (Point 4) the evidence is insufficient to support the court's findings and conclusions, and (Point 5) the findings and conclusions are against the great weight and preponderance of the evidence.

Specifically, appellant challenges the trial court's findings of fact numbers 4, 16, 19, 22, 26, 27 and 30, and all six conclusions of law, as being unsupported by, and against the great weight and preponderance of, the evidence presented at the August 2, 1990 hearing. His basic argument is two-fold. First, he says findings of fact numbers 4 and 30 are unsupported by the evidence because the trial court took out of context the answer John Mann, an attorney associated with the defense in the 1985 trial, gave upon cross-examination as follows:

Q. Well, were some of those witnesses just called to establish a predicate for the newspaper articles and things like that?

A. Mr. Clayton, I don't recall whether or not it was required by the State that we put on witnesses to prove up the authenticity and lay the predicate for the introduction of these Defendant's Exhibits 1 through 12 [newspaper articles and video tapes], or whether that was agreed and stipulated to with regard to their introduction.

It's my thinking that of those 23 witnesses, those were witnesses—and I could be wrong about this, but it's my recollection that those witnesses were witnesses as to opinion as opposed to predicate-type witnesses, but I'm not actually sure.

Appellant charges that in its findings numbers 4 and 30, the court misstated attorney Mann's testimony. He represents that the witnesses he presented at the evidentiary hearing testified to more than opinion only and, albeit the exhibits introduced are available, the exhibits do not include the information regarding the length and frequency of broadcasts.

Appellant and the State place different interpretations upon the quoted part of attorney Mann's testimony, particularly when considered with his other testimony; yet, it is unnecessary to detail them, for the fourth factual finding, faithful to Mann's recollection, cannot realistically be said to be a material misstatement of Mann's testimony. And, even conceding that the thirtieth factual finding could have been more explicit, it cannot be accurately classified as a misstatement. This obtains because the finding expressed the ultimate effect of the examination of the witnesses at the venue hearing, i.e., their opinions of outside influences affecting the community climate of opinion as to appellant, from which the likelihood of obtaining a fair and impartial jury can be determined. *Ransom v. State*, 789 S.W.2d 572, 578 (Tex.Cr.App. 1989), *cert. denied*, — U.S. —, 110 S.Ct. 3255, 111 L.Ed.2d 765 (1990).

Second, appellant maintains the trial court, in order to enter findings of fact numbers 16, 19, 21, 22, 26 and 27, relied entirely on Bascus' "technically untrue" affidavit and ignored his contradictory testimony at the evidentiary hearing, such as:

Q. In your affidavit, you also state that, "It is my belief the notes were lost or misplaced between October 4th, 1988, when I moved from McLeod (sic), Oklahoma, to Amarillo, Texas, and March the 20th, 1989, when I moved back to McLeod (sic)." Is that your testimony here today; is that your belief.

A. Yes.

Q. And, again, what are your reasons for that belief?

A. Because moving piecemeal my property from Oklahoma to Amarillo and back, the boxes became separated between here and Anadarko and McLeod. And at any given time, I don't know what was where.

The bottom line, appellant proposes, is that there is no credible evidence Bascus could have produced a statement of facts of the venue hearing even thirty days after the hearing. Then, he concludes, because the fault for losing the notes and being unable to produce a statement of facts from the venue hearing lies solely with Bascus, the denial of a critical part of the record is an unconstitutional denial of his right to effective assistance of counsel and due process of law.

■ Admittedly, the record reveals that some of Bascus' testimony contradicted some of his other testimony; and, as illustrated by the quoted excerpt, other portions of his testimony both supported and contradicted his affidavit. Whether, as appellant proposes, there was no credible evidence that Bascus could have produced the missing statement of facts within the time he was statutorily required to maintain his notes is not for us to decide; we do not sit as a trier of fact reweighing the contradictory evidence to decide, in particular, whether we believe or disbelieve Bascus' testimony. *Blankenship v. State*, 780 S.W.2d 198, 207 (Tex.Cr.App.1989). It was for Judge Gleason, chargeable with ascertaining the facts and drawing the legal conclusions at the evidentiary hearing, to judge the credibility of all the witnesses and assign the weight to be given their

testimony, being privileged to believe or disbelieve any part of any witness' testimony. We, not having heard the live testimony and observed the witnesses' demeanor, are not at liberty to disturb his factual findings if they are supported by evidence. In that event, our only concern is appellant's contention that the conclusions of law are not correct. *Johnson v. State*, 698 S.W.2d 154, 159 (Tex.Cr.App.1985), *cert. denied*, 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986).

■ As previously noted, Judge Gleason found that appellant absented himself from the court's jurisdiction and remained a fugitive for a period of over three and one half years, a factual finding that is not challenged. The judge also found there was "no evidence" that the venue notes were in fact lost at any time other than the time Bascus stated in his affidavit. Appellant has challenged this finding in particular, urging the finding places an impossible burden on him to prove the status of the notes. However, the question is not appellant's burden of proof on appeal; instead, the question is whether the evidence supports the court's finding that, in effect, the venue notes were lost on or after the October 4, 1988 date Bascus stated in his affidavit.

In addition to the previously recorded testimony, Judge Gleason heard other testimony by Bascus that he placed the venue notes in a manila envelope. Later, he placed all of his notes in this cause, including the envelope, in boxes to move them from the courthouse to the courts building, where the boxes remained until the last week in December of 1986 or the first week in January, 1987. After he ceased being the official court reporter, he stored the boxes in his father's garage in Anadarko, Oklahoma. Subsequently, between October 4, 1988 and March 20, 1989, he moved several times, twice taking some of the boxes to Amarillo and returning some of them to Anadarko. He attributed the loss of the venue notes during this period of time, because it was the first time the boxes had been separated, and the remainder of his notes were preserved.

This testimony was sufficient to support the challenged finding and, showing the notes were available for transcription for more than three years while appellant was a fugitive, lends ample credence to Judge Gleason's conclusion that appellant was not without fault for the missing record. *Weeks v. State*, 521 S.W.2d at 862. Thus, appellant's own misconduct prevents him from profitably claiming that the missing record is an unconstitutional denial of his right to effective assistance of counsel and due process of law. *Garces v. State*, 727 S.W.2d at 50.

In considering appellant's basic arguments, we also reviewed the collateral, but unargued, minor premises he advances for alleging the court erred in making the challenged findings and conclusions. We have not perceived anything therein that shows either the abuse of discretion necessary to disturb the findings of fact, *Jacobs v. State*, 787 S.W.2d 397, 400 (Tex.Cr.App.), *cert. denied*, — U.S. —, 111 S.Ct. 231, 112 L.Ed.2d 185 (1990), nor that incorrect conclusions of law were drawn from the findings of fact. *See Adams v. American Quarter Horse Ass'n*, 583 S.W.2d 828, 834 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.). Appellant's fourth and fifth points of error are overruled.

■ Pretrial, appellant filed a motion for change of venue, supported by the affidavits of two compurgators, alleging that because of extensive publicity, there exists in Potter County so great a prejudice against him that he cannot receive a fair trial. The State filed controverting affidavits. Tex. Code Crim.Proc.Ann. arts. 31.03, 31.04 (Vernon 1989). A hearing was conducted on the change of venue motion, the testimonial record of which, for the reasons explained above, is not a part of the appellate record. However, it was shown that appellant presented 23 witnesses and twelve exhibits of newspaper clippings, written radio and television news reports, and video tapes, and the State presented witnesses. The trial court denied the motion.

The denial was erroneous appellant charges, using his first point of error. The error is manifest, he says, "because the

pretrial publicity was so overwhelming, pervasive, prejudicial and inflammatory that [he] was denied the constitutional right to a fair trial by an impartial jury under the provisions of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, section 10 of the Texas Constitution."

Appellant bore the heavy burden of proving the existence of such prejudice in Potter County attributable to pervasive, prejudicial and inflammatory pretrial publicity that the likelihood of his obtaining a fair and impartial jury was doubtful. *DeBlanc v. State*, 799 S.W.2d 701, 704 (Tex.Cr.App. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2912, 115 L.Ed.2d 1075 (1991). Without a statement of facts of the venue hearing, appellant realizes the difficulty in presenting error in the court's ruling, but he attempts to do so by referring to the reconstructed events surrounding the voir dire examination of the jury panel.

Summoned were 100 panelists, of whom the court excused ten for personal reasons and one because he was a police officer who had discussed the case. Thirty-one panelists were excused by the court for the reason that they had established in their minds such a conclusion as to the guilt or innocence of appellant that it would influence their verdict. The remaining 58 members of the panel were subjected to examination by the parties.

Twenty-one panelists had knowledge of the case from the media coverage, but denied having formed an opinion about the guilt or innocence of appellant. Two of those, Wise and Trevino (or Tervino), were aware the proceeding was a retrial, and Trevino stated there was discussion in the central jury room that this was a retrial. Appellant, having been granted his motion in limine to prevent the State and witnesses from mentioning this case was previously tried, unsuccessfully moved to challenge Trevino for cause and for a mistrial. Neither Wise nor Trevino was selected as a juror.

Appellant represents he used all ten peremptory challenges, six of which were against panel members who had knowledge of the case through media coverage, and four panel members who indicated knowledge from news coverage served on the jury. Still, appellant did not request additional peremptory challenges and none of the twelve selected as jurors, or the one selected as alternate—each of whom vowed to be fair and impartial—was challenged for cause.

Agreeing with appellant that his first-point contention is one of constitutional dimension, *Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), we must determine whether he has shown from this record that there was such prejudice against him in the community that the likelihood of his obtaining a fair trial was doubtful. Unless he shows that the publicity about the case is so pervasive, prejudicial and inflammatory as to establish prejudice and require a change of venue, we cannot say the trial court abused its discretion in denying the motion for change of venue. *Phillips v. State,* 701 S.W.2d 875, 879 (Tex.Cr.App.1985), *cert. denied,* 477 U.S. 909, 106 S.Ct. 3285, 91 L.Ed.2d 574 (1986).

Appellant contends he has met the test by proposing that "[w]hen more than one-third of the prospective jurors disqualify on the first question from the Court because of pretrial publicity and many others are aware of the case and the fact that it is a retrial, the media coverage must surely have been pervasive. What is more, the prejudicial and inflammatory nature of the publicity is apparent from the fact that so many had formed an opinion about the Appellant's guilt before they ever heard a word of testimony." In this regard, the State suggests that appellant has waived any claim of actual prejudice on the part of the jurors, because the fact that he "did not challenge for cause any of the jurors so selected is strong evidence that he was convinced the jurors were not biased and had not formed any opinions as to his guilt." *Beck v. Washington,* 369 U.S. 541, 558, 82 S.Ct. 955, 964, 8 L.Ed.2d 98 (1962).

 In any event, the most appellant has demonstrated is that there was extensive publicity about the case that caused some

of the members of the jury panel to form established opinions, and that some panelists, four of whom served on the jury, had been exposed in some degree to the publicity. However, the constitutional standard of fairness does not require that qualified jurors be totally ignorant of the facts and issues involved. Exposure to information about an accused's prior convictions or to news accounts of the crime with which he is charged does not presumptively deprive him of due process, *see Murphy v. Florida,* 421 U.S. 794, 799–800, 95 S.Ct. 2031, 2035–36, 44 L.Ed.2d 589 (1975); nor does extensive knowledge in the community of the putative criminal, by itself, render a trial constitutionally unfair. *Dobbert v. Florida,* 432 U.S. 282, 303, 97 S.Ct. 2290, 2303, 53 L.Ed.2d 344 (1977). Indeed, in *Patton v. Yount,* 467 U.S. 1025, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984), the trial court's conclusion that the jurors and alternates selected would be impartial was not disturbed, *id.* at 1040, 104 S.Ct. at 2893, despite publicity which revealed the defendant's prior conviction and reversal, his confession and his prior plea of insanity, and the voir dire examination which revealed that all but two of 163 panelists questioned had heard about the case, 126 of whom would carry an opinion into the jury box. *Id.* at 1044–45, 104 S.Ct. at 2895–96.

Obviously, the evidence presented at the venue hearing created a factual dispute, requiring the trial court, as the sole trier of fact, to determine whether outside influences affecting the community's climate of opinion of appellant were inherently suspect. Based on this record, we cannot say appellant has shown such prejudice in Potter County that the likelihood of his obtaining a fair trial was doubtful, or that the trial court abused its discretion in denying his motion for change of venue. *DeBlanc v. State,* 799 S.W.2d at 704–05; *Phillips v. State,* 701 S.W.2d at 879–80. Appellant's first point of error is overruled.

Appellant utilizes his second and third points to contend that the trial judge erred in allowing the prosecution to cross-examine him regarding certain statements he made to the court-appointed psychiatrist during the court-ordered examination. A summary of the pertinent events is appropriate to position the points.

Before the first trial, appellant filed notice that he planned to plead insanity as a defense. The court appointed Dr. John Nottingham, a psychiatrist, and Dr. Jerome Brown, a clinical psychologist, both of Houston, to examine appellant, and ordered him to submit to their examination. The State agreed with appellant that his right to object to the proceedings would be preserved until the time of trial, and that the State would not use the evidence until rebuttal. Although he was given the Miranda warnings [*Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)] prior to questioning, appellant stated he was not waiving his Fifth Amendment rights against self-incrimination. The examination was conducted on February 16, 1983, and during the first trial, both doctors testified as rebuttal witnesses. *Wynne v. State,* 676 S.W.2d at 655–57.

Before the present prosecution, appellant, noticing that he would not pursue an insanity defense, filed two motions in limine seeking to prevent the State from inquiring into any statements he made to the doctors during the examination. Prior to presenting appellant as a witness, his counsel called the court's attention to the filing of the "motion in limine, as to psychiatric testimony," advised the court that appellant had made certain statements to the doctors, and requested the court to remind the prosecutor not to question appellant about them without first approaching the bench. The court, ascertaining that the State offered no further research "on this," withheld its ruling until after appellant's direct examination.

In recalling the events leading to his shooting the victim, *see Wynne v. State,* 676 S.W.2d at 652–53, appellant, having stated that he was driving his vehicle behind the pickup operated by the victim because he wanted to catch and talk to him, was examined and answered as follows:

Q. Had you decided what you were going to do?

A. I was going to talk to him, I know that. Maybe have a fight. I don't know what I was going to do, Mr. Shelton. I don't know what I intended to do. I was definitely going to stop him, catch him and talk to him.

Q. At that point in time were you still upset?

A. I was out of my head. I was nuts. I can't remember part of the things at all.

Q. Had there been any change in your feeling that you described earlier when you left the scene northwest of town until you got to that point where you were attempting to catch Mr. Mathis?

A. If anything, it kept accumulating. My chest was still hurting bad, but instead of worrying about a heart attack, my mind, as best I can remember, was on what has happened to my family? What has happened? What's going on?

\* \* \* \* \* \*

Q. Tell the jury, as you recall, immediately what happened there when his vehicle stopped and your vehicle stopped.

A. All right. The pickup sits up quite a bit higher than the rent car I was in, whatever kind it was, so he looked over and saw me and his face, well, again I can't describe it. He just went wild looking. Completely wild looking. That's the only way I can describe it. And that's when he reached over to the glove compartment and that's when I opened the door and stepped out with the pistol.

Q. Was anything said?

A. Yes.

Q. What do you recall being said?

A. I have thought about this many times. All I can swear to is, "It's a mistake. I made a mistake. We made a mistake." That or something about a mistake. And I shouted something.

Q. Do you remember what it was, Mr. Wynne, that you shouted?

A. Yes. It was a profanity. I don't remember exactly what it was. It was something. We both shouted at each other.

Q. What did you do then?

A. I shot him.

During the State's cross-examination of appellant, there is recorded the following:

Q. Mr. Wynne, do you ever recall telling a person in the course of an interview where you had been given your Miranda warnings—

MR. SHELTON: He's talking about the Miranda warnings and I respectfully lodge an objection to the matter he is about to go into.

THE COURT: I'll overrule the objection. I sustain your objection as to the Miranda warning. The jury will disregard the last question as to the Miranda warning being given.

MR. SHELTON: And I object to the matter he is about to go into about has he ever made a statement to this person for all the reasons that we heretofore enumerated and for all the grounds previously stated in the record.

THE COURT: Yes, sir. And the ruling of the Court will be that the objection is overruled.

Q. Do you recall making a statement, "I've got to be honest with you. I intended to kill him. There ain't no use sitting around lying."?

A. I probably did make that statement, referring to—at the time, at the scene when I first witnessed this.

Q. Did you make the further statement, "I was going to talk to him but, in all probability, I would have him pull over and then I would shoot him. But I wanted to talk to him first, so I called him a no good son of a bitch. He stole my wife and destroyed my life and I damned sure intended to kill him. If that puts me in the pen, that's tough."?

A. I may have made that statement.

The admission of this testimony, over appellant's objections, is the basis for his second and third points of error.

█ In developing his points, appellant first complains that the State was not even required to establish a predicate for the questions or to state the reasons why the evidence was offered. However, we do not

notice the complaint since it was not voiced to the trial court so as to preserve it for appellate review. Tex.R.App.P. 52(a). He also complains that the statements were highly prejudicial to him. The complaint per se is ineffective, for all evidence is intended to be, and most often is, prejudicial to a party to the proceedings.

The prevailing question is whether the statements were admissible in view of appellant's objections. He submits that their admission violated his rights under Texas Code of Criminal Procedure Annotated article 38.22 (Vernon 1979; Vernon Supp.1992), the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and Article I, sections 10 and 19 of the Texas Constitution. As material to appellant's objections, article 38.22 governs the use of a statement made by an accused as the result of custodial interrogation. The Fifth Amendment provides that an accused shall not be compelled to be a witness against himself; the Sixth Amendment guarantees an accused the assistance of counsel for his defense; and the Fourteenth Amendment mandates that no person shall be deprived of life, liberty, or property without due process of law. Similarly, Article 1, § 10 provides an accused with the same protection afforded by the First and Sixth Amendments; and section 19 contains the mandate of the Fourteenth Amendment.

Still, in pursuing his points from the stated predicates for his objections, appellant initially notes that when he made his statements to the doctors during their examination on February 16, 1983, his statements enjoyed the psychiatrist-patient privilege recognized by Texas law then in effect. Act of May 17, 1979, 66th Leg., R.S., ch. 239, 1979 Tex.Gen.Laws 512 (codified as Tex.Rev.Civ.Stat.Ann. art. 5561h (Vernon Supp.1980)). After the first trial in early 1983, the statute was amended, effective September 1, 1983, to provide, in part, an exception to the privilege in court proceedings "in any criminal prosecution where the patient is a victim, witness, or defendant." Act of June 19, 1983, 68th Leg., R.S., ch. 511, § 1, 1983 Tex.Gen.Laws 2970 (repealed 1991). Rule 509, Texas Rules of Criminal Evidence, became effective September 1, 1986 after the guilt-innocence phase of the present prosecution was completed, and provides that there is no physician-patient privilege in criminal proceedings.

■ Appellant urges that because his statements were privileged when made, and he raised the protections against their use afforded by article 38.22 and both the federal and state constitutions in his motion in limine and in his objections, the changing of procedural rules, *i.e.*, eliminating the privilege, cannot serve to abrogate his constitutional protections. In reply, the State asserts that not only did appellant fail to obtain a ruling on his motion in limine, but that his objection to the cross-examination neither referred to the motion nor stated a specific ground for the objection. Therefore, the State says, the objection may not be used to support the legal theories of inadmissibility now urged on appeal. *Rezac v. State*, 782 S.W.2d 869, 870 (Tex.Cr.App.1990).

Although, facially, the State's position appears meritorious, we discern from the recorded colloquy between the court and counsel that the court and the State were aware of the bases of appellant's objection, namely that the designated statutory and constitutional provisions protected him from the State's use of the statements. In this circumstance, appellant has not waived his contentions on appeal. *Long v. State*, 800 S.W.2d 545, 548 (Tex.Cr.App.1990).

■ At the threshold of our consideration of appellant's points, we observe that, even accepting his premise that his court-ordered examination was custodial interrogation, the State has pointed out that article 38.22, *supra*, specifies in section 5: "Nothing in this article precludes the admission of a statement made by the accused ... or of a voluntary statement, whether or not the result of custodial interrogation, that has a bearing upon the credibility of the accused as a witness, or of any other statement that may be admissible under law." In this regard, when appellant testified as a witness, he placed his credibility in issue, *Alexander v. State*, 740

S.W.2d 749, 763 (Tex.Cr.App.1987), and became subject to cross-examination and impeachment. *Huffman v. State,* 746 S.W.2d 212, 219 (Tex.Cr.App.1988). Thus, the article did not protect appellant from the use of the statements.

■ The State also points out that at the time of appellant's cross-examination, the statute granting the psychiatrist-patient privilege had been amended to provide an exception to the privilege in any criminal prosecution where the patient was a defendant; and that the exception, being procedural in nature, became operative from the effective date of the amendment and applicable in this prosecution. *Mosby v. State,* 703 S.W.2d 714, 721 (Tex.App.—Corpus Christi 1985, no pet'n). In *Mosby,* when the defendant made statements to a doctor during counseling, the statements were privileged, but because of the subsequent exception, the statements were not privileged when admitted into evidence at his trial. The defendant offered the same contention of a continuing privilege as appellant presents here, but the court held that the exception, being operative from its effective date, permitted the admission of the statements. *Id.* at 720–21.

Appellant, however, submits that *Mosby* is distinguishable. There, the counseling was voluntary, not court ordered; the doctor was not court appointed; and the opinion is silent as to the applicability of constitutional rights. Furthermore, he reiterates, the changing of procedural rules cannot serve to abrogate his Fifth Amendment right against self-incrimination, particularly when he specifically reserved that protection.

In this connection, appellant has focused his argument only on his Fifth Amendment right against self-incrimination. He has not attempted to demonstrate the applicability of the other constitutional protections listed in his motion in limine to the facts, although he does mention that it would be a direct violation of his Fifth and Sixth Amendment rights to remove the statutory protection after he made the choice to be interviewed under the umbrella of constitutional protections.

■ When appellant voluntarily testified, he became subject to being contradicted, impeached, cross-examined as to new matter, and made to give evidence against himself, unless there were overriding constitutional and statutory provisions. *Huffman v. State,* 746 S.W.2d at 219. In the light of appellant's presentation, we perceive no overriding protections against his statements admitted on cross-examination.

Appellant chose to make the statements after he received the Miranda warnings. As earlier explicated, the statutory provisions interposed by appellant did not protect him against the admission of the statements; indeed, the statutes authorized the admission. And even though the Fifth Amendment right against self-incrimination is to be jealously guarded, once appellant testified, "[t]he interests of the other party and regard for the function of the courts of justice to ascertain the truth become relevant, and prevail in the balance of considerations determining the scope and limits of the privilege against self-incrimination." *Id.* (quoting *Brown v. United States,* 356 U.S. 148, 156, 78 S.Ct. 622, 627, 2 L.Ed.2d 589 (1958)).

That the admission of appellant's statements was relevant to ascertaining the truth cannot be doubted. By virtue of its indictment, the State assumed the burden to prove beyond a reasonable doubt that appellant intentionally or knowingly caused the decedent's death. Tex.Penal Code Ann. § 19.02(a)(1). When appellant's testimony, a portion of which was reproduced previously, raised the issue of sudden passion, a charge on voluntary manslaughter became necessary and, to discharge its burden, the State was required to refute the existence of sudden passion beyond a reasonable doubt. *Bradley v. State,* 688 S.W.2d 847, 851 (Tex.Cr.App.1985). To do so, the State properly could produce appellant's statements made in the pretrial examination not only to test his credibility, *Ayers v. State,* 606 S.W.2d 936, 940 (Tex.Cr.App.1980), but to show the condition of his mind at the time of the homicide. Tex.Penal Code Ann. § 19.06(a) (Vernon Supp.1992); *Jones v.*

*State,* 153 Tex.Cr.R. 345, 220 S.W.2d 156, 159 (1949).

Under the circumstances, the trial court cannot be faulted for finding appellant's statements were relevant and admitting them over his objections. Appellant's second and third points of error are overruled.

Accordingly, the judgment is affirmed.